## WINSTON v. JONES AND HAIGH.

1. A testator, by his will, gave to his wife a life estate in one-third part of his land, a fifth part of his estate absolutely. He then proceeded to declare his intention to do equal justice to his children, and after reciting that he had previously given to a daughter, Mrs. W., certain property, in trust, which he estimated at one dollar, proceeded thus : " Now it is my will that after the payment of all my just debts, and allotting to my wife her portion, as herein before directed, to add to the residue of my estate of every description, the said sum of one dollar, the value of the property conveyed in trust for the use of Mrs. W., and to divide the sum total after making such addition, into seven parts, and I do hereby direct and require my executors to distribute and pay over the residue of my estate, both real and personal, in the following manner, to-wit; after deducting from one of said seven parts the sum of one dollar to pay over to said trustees the residue of said portion of Mrs. W., to be held for her use and benefit, and that of her heirs, and to pay to my daughters C. W., M. A., L. C., M. H., and to my sons J W. J. and W. B. J. one-seventh part of the residue of my estate as aforesaid, or to their legal representatives respectively. *Held*, that the executors were invested by the will with the power of selling the lands of the deceased to enable them to make distribution among the legatees.

Error to the Chancery Court of Franklin.

The bill was filed by the plaintiff in error, and alleges, that he became the purchaser of a tract of land in Franklin county, containing seven hundred acres, at a sale at public auction, in January, 1837, by the defendants in error, as executors of Arthur Jones, deceased, for which he agreed to pay twenty-one thousand seven hundred and eighty dollars, in two instalments, for which he executed two notes, and received from the defendants in error, at the time, the following bond for title.

Know all men by these presents, that we, John W. Jones and Jacob Haigh, executors of Arthur Jones, do obligate and bind ourselves to William Winston, to convey and make a deed in fee simple, to the tract of land purchased by said Winston at the sale of the effects of A. Jones, deceased, for which the said Winston became the purchaser at public auction, the title to be made on the last payment. Witness our hands and seals, the 8th May 1837.

John W. Jones, [Seal.]<br>Jacob Haigh, [Seal.]

That at the time of the sale, the executors alleged and professed to have power to make the sale. That he went into possession of the land, and has retained possession ever since. That he has fully paid the purchase money, and in April, 1839, demanded a title. That soon thereafter, he learned that the defendants in error had no power to sell and convey the lands which they had falsely and fraudulently alleged they had power to do.

That complainant then offered to take a conveyance from the adult heirs of Jones, and a covenant from four of them, that the minors should convey their interest when they became of age, which they agreed to—that having waited a long time, and the conveyances not being made, and one of them refusing so to do, on the 17th February, 1842, he gave them a written notice, that he abandoned the contract and required a return of the purchase money, and that if he retained the possession, it would be to prevent damage to the premises, and not as owner.

That he has recently learned that Sarah Washington is entitled to a trust estate in one seventh part of said land, to her sole and separate use, under the will of Arthur Jones, and that the executors could not sell her interest, but are trustees for the same.

That both Jones and Haigh reside out of the State, and that the latter is reputed to be insolvent, or greatly embarrassed.

The prayer of the bill is, that the contract of purchase be set

aside, and the purchase money restored to him, and that the interest of Jones & Haigh in the land, be sold to pay the same, and for general relief.

The will of Arthur Jones, which is made an exhibit, is as follows:

I, Arthur Jones, of Franklin county, in the State of Alabama, being of sound mind and memory, and desirous while in health, to provide for the hour of death, do make this my last will and testament, viz. After the payment of all my just debts and funeral expenses, I give and bequeath to my wife, Anna Jones, should she survive me, an estate during her life, in one third part of such lands as I may die seized of, according to quality and quantity, her portion to include the dwelling house, and also one fifth part of the personal estate, after paying my debts, to her and her heirs forever.

And as it is my wish and intention to do equal justice to all my children, and give to each, as nearly as practicable, an equal portion of my property, and as I have heretofore given to each of them, as they became of age or were married, about an equal portion, except that in addition to the portion of my daughter, Sarah W. Washington, conveyed by deed of trust, duly executed, and bearing date the 26th July, 1834, certain other property therein specified, to Jacob Haigh and John W. Jones, as trustees of her, my said daughter, of the value of one dollar. Now it is my will and desire, that after the payment of all my just debts, and allotting to my wife her portion, as herein before directed, to add to the residue of my estate of every description, the said sum of one dollar value of property, conveyed in trust for the use of my daughter, Sarah W. Washington, and to divide the sum total, after making such addition into seven parts; and I do hereby direct and require my executors, herein after named, to distribute and pay over the residue of my estate, both real and personal, in the following manner, to wit: After deducting from one of said seven parts, the said sum of one dollar, conveyed for the use of my daughter, Sarah W. Washington, to pay over to said trustees the residue of said portion, to be held by them in like trust, for her use and benefit of her and her heirs, and to pay to my daughter, Catharine B. Winston, and Martha W. Adair, and to my son John W. Jones, to my daughter Lucy H. Carroll, and Matilda Haigh, and to my son Wiley B. Jones, one seventh part of the

residue of my estate as aforesaid, or to their legal representatives respectively, and I do hereby constitute and appoint John W. Jones, Isaac Winston and Jacob Haigh, executors of this my last will and testament.

The bill being demurred to, the chancellor dismissed it, on the ground, that the complainant had adequate remedy at law on the bond given for title. From this decree, this writ is now prosecuted.

COOPER, for the plaintiff in error—argued, that until a deed was executed, the contract was executory, and that although there was neither fraud nor warranty, yet if a good title could not be made, a court of chancery would rescind the contract. [5 Paige, 300; 2 Brock. 306; Sugden on Vend. 260; 3 Peters' Con. R. 523; 11 Johns. 527, 12 id. 436; 14 id. 363, 453; 7 Mass. 31; 1 Dana, 305; 2 Kent's Com. 473; 1 Peters' R. 468; 3 Atkins, 185; 2 Edwards, 37.]

NOOE and McCLUNG, *contra*.—A sale was necessary, in order to carry out the intention of the testator, and therefore, by necessary implication, he has the power to sell. [1 J. C. R. 498; 6 id. 70; 2 P. Will. 194; 2 H. B. 450; 7 Cowen, 194; 5 East, 87; 5 Term, 292; 6 id. 70; 8 id. 1; 4 Ala. 21. 627; 5 How. 460; 5 Litt. 247.]

There is no equity in the bill. Chancery will not relieve for defect of title where this is a warranty, and there has been no eviction or fraud, but will leave the purchaser to his remedy at law. [Sug. 3 Ed. 346–7; 1 J. C. R. 218, 575; 2 id. 519; 5 id. 32; 2 Caine, 188; 5 Paige, 307; 26 Wend. 109.]

Where fraud is relied on, it must be distinctly alleged. [5 Litt. 248; 2 Ala. 604; 3 id. 252, 357, 318.]

Time is not of the essence of the contract. [Story's Eq. 85; Newland, 235; Sugden, 244; 5 C. E. C. R. 504; 1 Atk. 12; 1 J. C. R. 370; 8 Cranch. 471; 1 J. J. M. 597; 2 Bibb. 566; 7 Vesey, 272.]

There is a plain difference between a specific performance, and the rescission of a contract applicable to this case. [1 Dess. 382; 4 id. 132; 5 Paige, 307; 1 Vesey, 279.]

Equity requires diligence and promptness, in urging a rescission, even where fraud has intervened, and in such cases will pre-

sume a waiver, and leave the party to his remedy at law. [4 Ala. 38; 1 Bibb, 212; 4 id. 183; 2 Munroe, 16; 4 Dess. 135; 7 Ves. 272; 8 id, 689; 1 Pow. 306; 2 id. 153; 221.]

As to the parties residing out of the State, see 2 Porter, 351.

ORMOND, J.—The principal question in the cause, the power of the executors under the will to sell the lands of the testator for the purpose of distribution, is one of some difficulty, depending upon the construction of an inartificial and badly drawn will.

No precise form of words is necessary to the creation of a power; if the intention to confer the power is apparent, to enable the executor to execute the trusts of the will, the power will be implied. Thus, if land is devised to an executor for the purpose of paying the debts of the deceased, a power of sale will be implied. [Blatch v. Wilder, 1 Atk. 419, and note 1; 1 Sheppard's Touch. 43; 1 Sugden on Pow. 115.] So, where land is directed generally to be sold, without providing by whom, for the purpose of paying debts and legacies, as the product of the sale is to be applied by the executors, a power of sale will be implied to them. [Tilden v. Hyde, 2 Sim. & St. 238.]

In this case, it is very clear that the distribution of the estate, both real and personal, is given to the executors. The only question, therefore, is, whether the testator designed that the land should be sold in order to distribution being made.

The general conception of the will, avowed at the out set, is, an equal division of all the testator's property among his children. He first gives to his wife an interest in his land equal to her dower, and a portion of the personal estate; the executors are then required, after the payment of his debts, *to add to the residue of his estate of every description*, the sum of one dollar, which he estimates as the value of certain property he had previously given to his daughter, Sarah Washington; and after making such addition, to divide the sum total into seven parts. The executors were then required to *distribute and pay over* the residue of the estate, *both real and personal*, to each of the seven children, deducting from the share of Mrs. Washington, the sum of one dollar.

The terms, "add to" and "divide into seven parts," necessarily imply that there was some fund, similar in kind, with which the addition could be made, and which, when added to, would be

susceptible of division into parts. But how could money be added to land, and the product be divided into equal parts? Again: these parts so obtained, are to be paid over to the legatees severally. The use of these terms is quite persuasive that the prevailing idea in the testator's mind, was that of a sum of money which might be added to, divided, and paid over.

This view is greatly strengthened by the opposite construction, the one contended for by the counsel for the plaintiff in error, that the land itself was to be equally divided among the heirs. If this be so, then the power of allotting it in specie to the legatees, is given to the executors. The land was, it appears, a plantation, consisting, of course, of land cleared for cultivation, and a portion in a state of nature; and, therefore, necessarily of unequal value. To make the different parcels of equal value, it would be necessary that some should be smaller, and some larger than others, and it would be in their power, as it would be their duty, to designate which parcel each of the legatees should be entitled to; for the will is express that the executors shall distribute and pay over the estate, both real and personal. That such a power as this should be intended to be conferred on the executors, is highly improbable.

It ought not to be overlooked, in construing this will, that an entire plantation is more valuable as a whole, than the aggregate of all its parts would be if divided; and that the process of selling land so circumstanced, for the purpose of more equal distribution, is common in the country, the power being lodged with the county court, and with which all persons are familiar. The probability, therefore, is, that the testator was merely providing, by his will, for doing that which he knew would be done on application to the county court.

The principal difficulty which I have felt upon the subject, arises from the creation, by the testator, of a life estate in one-third part of the land in favor of his wife. In reality, however, this difficulty occurs in every case of intestacy where there is a dower interest, and the land is directed to be sold by the county court, either to make more equal distribution, or for the purpose of paying debts. In such cases, as in this, it must be sold subject to the dower of the widow, unless she consents to relinquish her interest; and in practice, no difficulty is ever found on this score. We think, therefore, that although the power to sell the lands is not as clearly given by the will to the executors as it is

desirable, in all cases, that it should be, it may be fairly inferred that such was the intention; as in no other mode could the manifest design of the testator be effectuated.

Adjudged cases are, in general, of but little use in expounding wills, further than to establish general principles as land marks. We have, however, looked into the books, and in our opinion, the cases analogous to this, sustain the view here taken.

In Bentham v. Wiltshire, [4 Madd. C. 44,] the testator directed land to be sold, without saying by whom, and without giving his executors the disposition of the proceeds. The court said, "to enable executors to sell, the power must be either expressly given to them, or necessarily to be implied from the produce being to pass through their hands in the execution of their office, as in the payment of debts and legacies; but here, the executors have nothing to do with the produce of the sale, nor any power of distribution with respect to it;" and upon this ground, it was determined the executor had no power to sell. In Patton v. Randall, [1 Jac. & W. 189,] the same decision was made upon a similar state of facts. But in Tylden v. Hyde, [2 Sim. & St. 238,] where there was a general direction to sell land, and the product of the sale to be divided by the executor among certain persons, the vice chancellor held, "that where there was a general direction to sell, but it is not stated by whom the sale is to be made, then, if the produce of the sale is to be applied by the executors in the execution of their office, a power to sell will be implied to the executors."

The principle to be extracted from these cases, is the one which must govern this. In them, it is true, there was an express direction to sell, and the question before the court was, who was to execute the power. In this case, the intention that the land should be sold, though not expressly declared, is plainly inferrible from the whole will; and when so ascertained, it must exert the same influence as if put down in express words. When, therefore, it is ascertained, that the land is to be sold for the purpose of distribution, and that this distribution is to be made by the executors, their power to sell necessarily follows; as otherwise they could not execute the trust. This is the precise point decided in the case last cited, of Tylden v. Hyde.

It does not militate against the view here taken, that the portion of Mrs. Washington is to vest in trustees for her benefit—

the money will be trust property precisely as the land would have been had it been given to trustees for her benefit.

This bill is not filed for a specific performance: its object is to obtain a rescission of the contract, because it was supposed the executors, having no power to sell, could not make a valid title. This we have shown to be a mistake; and as we cannot assume that the executors will refuse to make title, we can perceive no reason for retaining the bill.

Having attained the same conclusion as the chancellor, though by a different process, his decree, dismissing the bill, must be affirmed; but as the question was one upon which doubts might not unreasonably be entertained, each party will pay his own costs.