Hillsborough, {
Nov. 5, 1907. {

### HARRIS *& a.*, Ex'rs, *v.* INGALLS *& a.*

An express direction for the division of the residue of an estate into four equal parts and the distribution of each part among the heirs of certain relatives is sufficient to invest executors with authority to convert the realty into money for the purpose of such division, when the location and character of the property and the number of the beneficiaries render such a course necessary in order to effectuate the testator's intention to give a share in severalty to each of the distributees.

It is advisable, although not essential, that an executor who is authorized by will to dispose of the testator's realty should procure a license from the probate court.

Where a resident of this state provides by will for a division of property among the "legal heirs" of certain relatives, the persons entitled to share are those who answered the description according to the laws of this state, at the time of the testator's decease; and such division is to be made as is provided by the laws of this state for the distribution of the estate of a deceased person among his descendants.

If a will directs a division of property among the "legal heirs" of a relative who survived the testator, the persons entitled to share are those who would have been legal heirs in case such relative had been dead at the date of the testator's decease.

BILL IN EQUITY, by the executors of the will of Josiah G. Graves, late of Nashua, praying for direction as to the execution of the provisions of the will. The will is the same that was considered upon a former transfer. *Harris* v. *Ingalls, ante,* 35. The same facts are now transferred, together with some additional facts which, so far as material to the questions considered, appear in the opinion. Transferred from the May term, 1907, of the superior court by *Peaslee,* J.

*Burns & Burns,* for the plaintiffs.

*Burnham, Brown, Jones & Warren,* for the defendants.

CHASE, J. The second and third questions submitted are the same in substance as the third question submitted upon the former transfer: whether the plaintiffs have authority to distribute any part of the residue of the estate before the last annual payment to a legatee falls due. This question has been fully answered (*Harris* v. *Ingalls, ante,* 38) ; and no new fact is now submitted, and no reason has been suggested or has occurred to the court, which requires a change of the answer.

The first question submitted is, whether the plaintiffs have authority under the residuary clause of the will to sell and convey the testator's real estate or any part of it, and if so, in what manner and when. This is substantially the same as the second question submitted and considered upon the former transfer. The residuary clause reads as follows: "All the residue and remainder of my property, real, personal, and mixed, I order my executors to divide into four equal parts; and I give and bequeath one part thereof to the legal heirs of my mother's brother, Benjamin Ingalls, to be equally divided among them; and I give and bequeath one part thereof to the legal heirs of my mother's brother, Simeon Ingalls, to be equally divided among them; I give and bequeath one part thereof to the legal heirs of my mother's sister, Sophronia, to be equally divided among them; and I give and bequeath to the legal heirs of my mother's sister, Mariette, one part thereof, to be equally divided among them."

The only facts previously transferred bearing upon the question were the terms of the will and the fact that the estate consisted of both personal and real property, the former being more than

·sufficient to pay the debts and legacies. The court held that it did not clearly appear from these facts that the testator intended to make it the duty of the executors to convert the real estate into money for division. *Harris* v. *Ingalls*, ante, 37. Upon the present transfer, the following additional facts are submitted for ·consideration: The real estate consists of a lot of land in Nashua, sixty by ninety feet in extent, with house upon it, all valued $3,000; a lot in Massachusetts, sixty by sixty feet, with summer ·cottage upon it, valued $5,000; an undivided fractional interest in a Colorado mine, value unknown; two tracts of land, not adjoining, situated in Butler county, Iowa, both containing 448 acres, and valued $13,440; one tract of forty acres in Winnebago county, Iowa, valued $125; and "surveys" of numerous disconnected tracts of land in Brewster and Crockett counties, Texas, together containing 7,680 acres and supposed to be worth $7,680.

Benjamin Ingalls survived the testator nearly a year and a half. Simeon Ingalls and the aunts, Sophronia and Mariette, died before the will was made. Benjamin left four children surviving him, and one child died between the death of the testator and Benjamin's death, leaving five children. Six children of Simeon survived the testator and two died earlier, one leaving three children and the other one child, all of whom survived the testator; Sophronia left two children, both of whom survived the testator; ·one has since died leaving five grandchildren. Another child of Sophronia died prior to the testator's death, leaving one child, who is still living. Mariette left four children, all of whom survived the testator, and one of whom has since died leaving three chil- ·dren. These children and grandchildren of the testator's uncles and aunts reside outside this state, widely scattered in different states. It is understood that they are the defendants.

In view of these additional facts, in connection with the terms of the will and the facts formerly transferred, does it clearly appear that the testator intended that the executors should convert his real estate into money preparatory to the division provided for in the residuary clause of the will? It is said in Perry on Trusts (*vol.* 2, *s.* 766): "No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee. . . . A devise and direction to divide and pay over the shares to legatees, where a division is impracticable, implies a power to sell. A mere ·direction to divide is not enough; there must be some further ·active duty to perform." This is a fair statement of the decisions on the subject. *Going* v. *Emery*, 16 Pick. 107; *May* v. *Brewster*,

187 Mass. 524; *Hobson* v. *Hale*, 95 N. Y. 588; *Cahill* v. *Russell*, 140 N. Y. 402; *Corse* v. *Chapman*, 153 N. Y. 466; *Salisbury* v. *Slade*, 160 N. Y. 278; *Murdock* v. *Kelley*, 62 N. Y. App. Div. 562; *Lindley* v. *O'Reilly*, 50 N. J. Law 636; *Chandler* v. *Thompson*, 62 N. J. Eq. 723; *Winston* v. *Jones*, 6 Ala. 550; *Hale* v. *Hale*, 125 Ill. 399; *Gammon* v. *Gammon*, 153 Ill. 41; *Stoff* v. *McGinn*, 178 Ill. 46; *Penfield* v. *Tower*, 1 No. Dak. 216; 7 Am. & Eng. Enc. Law (2d ed.) 466; 11 *Ib.* 1043; 18 Cyc. 320.   The difficulty has arisen, not so much from doubt as to what the law was, as from doubts arising in the application of the law to the facts of a case. Cases differ so widely in their facts that little aid can be derived from them in attempting to apply the law to the facts of a particular case.

That the testator, in the case under consideration, intended to make it the duty of his executors to divide the residue of his property, real, personal, and mixed, into four equal parts for transmission to the legal heirs of his maternal uncles and aunts, is beyond question.   His language is in the form of an order and is unequivocal in meaning.   The express order to the executors to divide the property into four equal parts renders it impossible to find that the intention was simply to give the heirs of the uncles and aunts undivided fractional parts of undivided fourth parts of the entire property.   It is also quite certain that the testator intended the four parts should be so nearly equal in value and desirability that it would be a matter of indifference to the beneficiaries to which of the parts their respective interests attached. It must be presumed that he knew of the scattered locations and of the difference in character of his real estate.   He knew whether it would be practicable to divide it, in kind, into four parts having the equality which he intended.   If such division is not possible, it reasonably may be inferred that his order to divide implied the doing of whatever was necessary to accomplish the division.   The adaptability or non-adaptability of the property to such division therefore becomes a material fact to be considered in ascertaining his intention with respect to conferring upon the executors power to sell the property.   *Perkins* v. *Mathes*, 49 N. H. 107; *Sanborn* v. *Sanborn*, 62 N. H. 631; *Cahill* v. *Russell*, 140 N. Y. 402.   The real estate consists of many parcels of land scattered in parts of the United States widely separated from each other, those in this state and Massachusetts, at least, being incapable of division into four equal parts.   It does not appear what the character of the Iowa lands is, nor what is meant by "surveys" of the Texas lands. It is reasonably certain, however, that these lands cannot be so equally divided into four parts that it will be a matter of indifference to a particular class of the legatees which part they take.

See *Bedford* v. *Bedford*, 110 Tenn. 204. Moreover, according to the testator's scheme, each of the four parts is ultimately to be divided into smaller parts. The individuals who are to receive the ultimate parts are widely scattered over the country. None of them resides where any of the lands are situated. It is apparent that necessity—not convenience, merely—requires the lands to be converted into money for the purposes of the divisions contemplated by the testator. It is noted, also, that he classes the real property of the residue of his estate with the personal and mixed property thereof, and uses the word "bequeath" to perform the office of transferring the whole—a word that is properly used in such connection only when the property is of a personal nature. While, as was said upon the former transfer, this circumstance of itself is not conclusive as to the testator's intention, it has some tendency to prove that he understood he was providing for the transfer of personal property, instead of real estate. *Merritt* v. *Merritt*, 32 N. Y. App. Div. 442. If he understood his order to the executors impliedly imposed upon them the duty of converting his real estate into money, as a step necessarily to be taken in dividing the property into four equal parts, the order with the implied power of sale operated in equity to convert the property from realty to personalty (*Perkins* v. *Coughlan*, 148 Mass. 30; *Salisbury* v. *Slade*, 160 N. Y. 278, 288, and authorities cited; *Penfield* v. *Tower*, 1 No. Dak. 216), and the use of the word "bequeath" was technically correct. If it appeared that the intention was to devise to the "legal heirs" undivided fractional parts of the real estate, no power of sale would be conferred upon the executors by implication, for such power cannot thus arise in opposition to an express devise. *Mapes* v. *Tyler*, 43 Barb. 421; *Gammon* v. *Gammon*, 153 Ill. 41. But, as has been seen, the intention clearly was to give the individuals referred to divided portions of the residue in severalty.

The association of the real property of the residue with the personal and mixed property thereof in a common mass, for division, also has some slight tendency to prove that the testator understood that the real property was to be treated by the executors like the personal property in making the division; or, in other words, that it was to be converted into money for the purpose. Upon all the facts now presented, it appears reasonably clear that the testator intended, by the provisions of the will, to impose upon the executors the duty of converting the residue of his property, real, personal, and mixed, into money as a necessary incident of its division into four equal parts, and the duty of distributing the parts among the legatees as set forth in the residuary clause of the will; and the plaintiffs are so advised.

As was said in the former opinion, if the legatees all prefer to take the real estate and hold it in common, and so elect, the executors will not violate their duty by allowing the legatees to so take the property. Indeed, if the legatees are all *sui juris*, it would seem that they have the right to elect to reconvert this property to real estate. *Sears* v. *Choate*, 146 Mass. 395; *Greenland* v. *Waddell*, 116 N. Y. 234; *Mellen* v. *Mellen*, 139 N. Y. 210; *Huber* v. *Donoghue*, 49 N. J. Eq. 125; *Lash* v. *Lash*, 209 Ill. 595; *Boland* v. *Tiernay*, 118 Ia. 59; *Bank of Ukiah* v. *Rice*, 143 Cal. 265; *Craig* v. *Leslie*, 3 Wheat. 563; 3 Pom. Eq. Jur., *s.* 1175; 1 Sto. Eq. Jur., *s.* 793.

The manner in which the sale is to be made, if made by the executors, depends upon the laws of the state where the real estate is situated. The plaintiffs, by virtue of their office, as executors of the will, have authority to sell the real estate situated in this state. While no license from the court for the purpose is necessary in the absence of a statute requiring it (*Going* v. *Emery*, 16 Pick. 107), it seems advisable, in view of the statutory provision on the subject in this state, that the plaintiffs should procure a license for making the sale of the land situated here. P. S., *c.* 194, *s.* 15. The sales should be made without unreasonable delay. It would serve no useful purpose for this court to attempt to advise the executors as to the manner of making sales in other states.

The fourth question submitted relates to the interpretation of the words "legal heirs,"—whether they were used with reference to the date of the testator's death or the date of the last payment to a legatee, and whether with reference to the laws of this state, the laws of the states where the real estate is situated, or the laws of the places of residence of the uncles and aunts referred to. A will speaks as of the date of the testator's death, unless a different intention is expressed. *Campbell* v. *Clark*, 64 N. H. 328, 330; *Frost* v. *Wingate*, 73 N. H. 535, 537. No different intention is expressed directly or inferentially in this will; and the "legal heirs" intended are those persons who answered that description at the time of the testator's death. There were no persons who, strictly speaking, were "legal heirs" of Benjamin Ingalls at that time, for he was then living. In view of the fact that the testator evidently intended to dispose of all his estate by the will (*Kennard* v. *Kennard*, 63 N. H. 303, 311), it is apparent that he used the words "legal heirs," so far as they relate to Benjamin, in a sense different from their strict technical sense. It is not a very uncommon thing for a person to speak of the children or other near relatives of a living person as his heirs; and in this instance the words manifestly refer to the persons who would be the legal heirs of

Benjamin at the time of the testator's death, in case Benjamin was then dead. *Sanborn* v. *Sanborn*, 62 N. H. 631; *Shapleigh* v. *Shapleigh*, 69 N. H. 577, 579; *Morton* v. *Barrett*, 22 Me. 257; *Lockwood* v. *Jesup*, 9 Conn. 272; *Healy* v. *Healy*, 70 Conn. 467; *Carne* v. *Roch*, 7 Bing. 226.

The majority of the court are of the opinion that the testator intended, by the words "legal heirs," those persons who answer that description according to the laws of this state, and by the provisions for equally dividing each of the four parts among the "legal heirs" of the persons named, such division as is provided by the laws of this state for the distribution of the estate of a deceased person among his descendants.

*Case discharged.*

All concurred.