EDWIN B. SALISBURY, Respondent, *v.* BENJAMIN J. SLADE, Appellant, and MABEL SHELDON et al., Respondents.

1. WILL — IMPLIED IMPERATIVE POWER OF SALE — EQUITABLE CONVERSION. When the language and general scheme of a will raise an implied and imperative power of sale in order to carry out its provisions, there is an equitable conversion of the real estate into personalty.

2. ESTATE DEVISED IN SHARES, SOME ABSOLUTELY, OTHERS IN TRUST SUBJECT TO LIFE ESTATES — FEE VESTED IN TRUSTEE AND IN DEVISEES OF SHARES ABSOLUTELY DISPOSED OF, FOR PURPOSE OF CONVERSION INTO PERSONALTY. Where the entire *corpus* of the estate is not bequeathed and devised to remaindermen subject to life estates in trust, whose beneficiaries receive the income and rents, but on the contrary the *corpus* is to be divided into several shares, some of which are disposed of absolutely and at once, and the rest of which may be held in distinct trusts for many years, subject to life estates falling in at different times, and the will works an equitable conversion of the real estate into personalty, the naked fee of the land is vested in the trustee, subject only to the execution of the trust, and in the devisees of the shares absolutely disposed of, for the purpose of carrying out the equitable conversion accomplished by the will.

3. REMAINDERMAN OF TRUST SHARE NOT NECESSARY PARTY TO PARTITION SUIT FOR CARRYING OUT EQUITABLE CONVERSION OF REALTY INTO PERSONALTY, NOR ENTITLED TO MAINTAIN PARTITION SUIT THEREAFTER. In such case, the remaindermen of the trust shares, not being entitled to the possession of the land upon the ceasing of the intermediate estates, but to the principal of the trust, are not necessary or proper parties to an action for partition for the purpose of carrying out the equitable conversion, and a remainderman, on the ceasing of the intermediate estate in his share, after the carrying out of the conversion, has no estate in the realty which will entitle him to maintain an action of partition.

*Salisbury* v. *Slade*, 22 App. Div. 346, reversed.

(Argued June 21, 1899; decided October 3, 1899.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 11, 1897, affirming an interlocutory judgment in an action for partition, directing a sale of the premises described in the complaint.

The facts, so far as material, and the question certified for review are stated in the opinion.

*Charles S. Lester* for appellant. The complaint does not state facts sufficient to constitute a cause of action, as it appears thereby that the plaintiff did not have an estate of inheritance in the lands described in the complaint. (Code Civ. Pro. § 499; *Coffin* v. *Reynolds*, 37 N. Y. 640; *Munger* v. *Shannon*, 61 N. Y. 251; *Palmer* v. *Lorillard*, 16 Johns. 348; *Sanford* v. *Granger*, 12 Barb. 392; *Fallon* v. *Lawler*, 102 N. Y. 233; *Campbell* v. *Stakes*, 2 Wend. 147; *Van Alstyne* v. *Freday*, 41 N. Y. 174; *Pope* v. *T. H. M. Co.*, 107 N. Y. 61; *Tooker* v. *Arnoux*, 76 N. Y. 397; *Stone* v. *G. B. Co.*, 77 Hun, 99.) The second defense in the answer of defendant sets up a former partition and sale to defendant, and is an absolute bar to the maintenance of this action. (*Brayton* v. *Sherman*, 119 N. Y. 623; *Halpin* v. *P. Ins. Co.*, 118 N. Y. 165; *Aldridge* v. *Aldridge*, 120 N. Y. 614; *Cheeseman* v. *Thorn*, 1 Edw. Ch. 627; *Brevoort* v. *Brevoort*, 70 N. Y. 140; *Gallie* v. *Eagle*, 65 Barb. 583; *McLean* v. *MacDonald*, 2 Barb. 534; *Dodge* v. *Stevens*, 94 N. Y. 209; *Harrington* v. *E. C. S. Bank*, 101 N. Y. 257; *Roach* v. *Duckworth*, 95 N. Y. 391.) The claim that the appearance of the defendant upon the reference was a waiver of his rights is incorrect. (*Doyle* v. *M. E. Ry. Co.*, 1 Misc. Rep. 376; *Matter of N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 112; *Matter of N. Y., L. & W. Ry. Co.*, 126 N. Y. 632; *Brown* v. *Mayor, etc.*, 9 Hun, 587.) The plaintiff, however, is in no condition to take advantage of any such claim, even if it were well founded, because his own irregularity and negligence misled the defendant and preceded all these acts of the defendant. (*Putzel* v. *Shulhoff*, 29 N. Y. S. R. 26; *Clason* v. *Baldwin*, 36 N. Y. S. R. 982; *Reynolds* v. *E. L. Ins. Co.*, 6 App. Div. 254; *Hall* v. *Beston*, 13 App. Div. 116; *Wood* v. *Lary*, 124 N. Y. 83; *Eaton* v. *Wells*, 82 N. Y. 576.). It cannot be said that these points were not presented in the court below, as the principal defense is spread on the record in the defendant's answer, and the decision of the judge, overruling the answer, was excepted to in the manner provided by the Code. (*McGoldrick* v. *Wil-*

*llts,* 52 N. Y. 620; *Belknap* v. *Sealey,* 14 N. Y. 143; *Knapp*
v. *Simon,* 96 N. Y. 292; *Valentine* v. *Richardt,* 126 N. Y.
277; *Bradley* v. *Aldrich,* 40 N. Y. 504; *Rogers* v. *N. Y. &
T. L. Co.,* 134 N. Y. 198; *Arnold* v. *Angell,* 62 N. Y. 508.)
If there were no other reason for reversing this interlocutory
judgment, it should be reversed on account of the illegal,
improper and oppressive order of reference contained therein
and inserted against the objections of the defendant. (*Doyle*
v. *M. E. Ry. Co.,* 1 Misc. Rep. 376; *Thayer* v. *McNaughton,*
117 N. Y. 111; *Spence* v. *Simis,* 137 N. Y. 616.)

*Thos. O'Connor* for Edwin B. Salisbury, respondent. No
other question than the one certified can be considered by the
Court of Appeals. (Code Civ. Pro. § 190, subd. 2; *Coats-
worth* v. *L. V. Ry. Co.,* 156 N. Y. 458; *Grannan* v. *W. R.
Assn.,* 153 N. Y. 457; *Davis* v. *Cornue,* 151 N. Y. 177.)
The question certified is not involved in the case, no such
issue having been presented by the pleadings or determined
by the trial court. (Code Civ. Pro. § 522; *Bernstein* v.
*Crow,* 22 Misc. Rep. 99; *Fleischmann* v. *Stern,* 90 N. Y.
110; *A. L. Co.* v. *Abrahams,* 19 Misc. Rep. 425; *Bruce* v.
*Kelley,* 39 N. Y. Supp. 27; *Salisbury* v. *Howe,* 87 N. Y.
129; *Stapenhorst* v. *Wolff,* 65 N. Y. 596; *Quinby* v. *Carhart,*
133 N. Y. 579; *Delaney* v. *Brett,* 51 N. Y. 78; *Hooper* v.
*Beecher,* 109 N. Y. 609; *Schenck* v. *Barnes,* 156 N. Y. 317.)
There was no conversion of the real estate into personalty by
the will of Benjamin Slade, and the children of the daughters
took the fee on the death of their mother. (*Rausch* v. *Rausch,*
31 N. Y. Supp. 786; *Scholle* v. *Scholle,* 113 N. Y. 261; *Camp-
bell* v. *Stokes,* 142 N. Y. 23; *Matter of Tienken,* 131 N. Y. 391;
*Clift* v. *Moses,* 116 N. Y. 144; *Cooke* v. *Platt,* 98 N. Y. 35;
*Smith* v. *Secor,* 157 N. Y. 402; *Felter* v. *Ackerson,* 35 App.
Div. 282; *O'Toole* v. *O'Toole,* 39 App. Div. 302.) Appel-
lant acquired no title by the partition action which he brought
in 1880 as against respondents. (*Sandford* v. *White,* 56 N.
Y. 359; *Moore* v. *Appleby,* 108 N. Y. 237; *Miller* v. *Wright,*
109 N. Y. 194; *Campbell* v. *Stokes,* 142 N. Y. 23; *Fulton*

v. *Whitney*, 66 N. Y. 548 ; *Bennett* v. *Austin*, 81 N.Y. 308 ; *Rogers* v. *Rogers*, 3 Wend. 503 ; *Scholle* v. *Scholle*, 113 N. Y. 261 ; *Moore* v. *Moore*, 5 N. Y. 261 ; *De Caters* v. *De Chaumont*, 3 Paige, 179.) The order of reference was right. The court had power to make the order of reference without consent. The referee was designated by the court as required by section 1012 and rule 66, there being infant defendants in the case. Under section 1013 the court had abundant power to refer the issues involved before the referee and to make this order, and section 1015 of the Code contains still further authority for the provisions of the interlocutory judgment as to a reference. (Code Civ. Pro. §§ 1013, 1014 ; 18 Abb. [N. C.] 418–420 ; *Cosgriff* v. *Foss*, 152 N. Y. 104 ; *Rowland* v. *Rowland*, 141 N. Y. 485 ; *Drexel* v. *Pease*, 129 N. Y. 96 ; *Keator* v. *U. & D. P. R. Co.*, 7 How. Pr. 41 ; *Lennon* v. *Smith*, 18 N. Y. Supp. 213 ; *Baird* v. *Mayor, etc.*, 74 N. Y. 382 ; *Zapp* v. *Miller*, 109 N. Y. 51 ; *Rodermund* v. *Clark*, 46 N. Y. 354 ; *Kinney* v. *Kiernan*, 49 N. Y. 164 ; *Fowler* v. *B. S. Bank*, 113 N. Y. 450.) Plaintiff was entitled to recover for the acts of waste committed by appellant upon the premises. (*Elwell* v. *Burnside*, 44 Barb. 447 ; *Muldowney* v. *M. & E. R. R. Co.*, 42 Hun, 444 ; Code Civ. Pro. §§ 1655, 1656 ; *Harder* v. *Harder*, 26 Barb. 409 ; *Rutherford* v. *Aiken*, 3 T. & C. 60 ; *McCabe* v. *McCabe*, 18 Hun, 153.)

*J. W. Houghton*, guardian *ad litem* for Jennie F. Salisbury, infant, respondent. If the pleadings in the action admitted the title of the plaintiff and the defendant Jennie F. Salisbury, either by express admission or failure to deny, no issue was involved in the action which requires an interpretation of the provisions of the will of Benjamin Slade, the common source of title, and the question certified by the Appellate Division is a mere abstract proposition, not arising in the action, which this court will not consider notwithstanding it has been certified. (*Baxter* v. *McDonnell*, 154 N. Y. 432 ; Code Civ. Pro. § 522 ; *Paige* v. *Willet*, 38 N. Y. 28 ; *Fleischmann* v. *Stern*, 90 N. Y. 110 ; *Ferris* v. *Hard*, 135

N. Y. 361.) The record disclosing that the Appellate Division unanimously affirmed the findings of fact made by the trial court that the plaintiff and respondent defendants were owners in fee of certain undivided interests in the lands described in the complaint, this court has no power to review them in order to ascertain whether or not they are sustained by the evidence. (*Farnham* v. *Hotchkiss*, 2 Abb. Ct. App. Dec. 93; Code Civ. Pro. § 191, subd. 4; *People ex rel.* v. *Barker*, 152 N. Y. 417; *People ex rel.* v. *Bd. R. R. Comrs.*, 158 N. Y. 421; *Ayres* v. *D., L. & W. R. R. Co.*, 158 N. Y. 254; *Benedict* v. *Arnoux*, 154 N. Y. 715; *Snyder* v. *Seaman*, 157 N. Y. 449; *Griggs* v. *Day*, 158 N. Y. 1; *Otten* v. *M. Ry. Co.*, 150 N. Y. 400.) Respondents had an interest under the will of Benjamin Slade as remaindermen of the one-seventh part given to their mother, Jane F. Salisbury, for life, which was not affected by the partition action of 1880, to which they were not made parties, and the appellant purchaser at the sale in that action did not obtain title to their shares. · (*Hobson* v. *Hale*, 95 N. Y. 588; *Read* v. *Williams*, 125 N. Y. 571; *Scholle* v. *Scholle*, 113 N. Y. 261; *Chamberlain* v. *Taylor*, 105 N. Y. 186; *Gourley* v. *Campbell*, 66 N. Y. 169; *Phelps* v. *Pond*, 23 N. Y. 69; *Power* v. *Cassidy*, 79 N. Y. 602; *Lent* v. *Howard*, 89 N. Y. 169; *Phillips* v. *Davies*, 92 N. Y. 199; *Delafield* v. *Barlow*, 107 N. Y. 535.) The claim of the appellant, that the title to the whole estate vested in the trustee in such manner that partition could not be brought by the owners of the future legal estate, is untenable. (*Losey* v. *Stanley*, 147 N. Y. 560; *Matter of Tienken*, 131 N. Y. 391; *Watkins* v. *Reynolds*, 123 N. Y. 211; *Campbell* v. *Stokes*, 142 N. Y. 23.)

*George B. Lawrence*, guardian *ad litem*, for Mabel Sheldon et al., infants, respondents. The question certified to this court should be answered in the affirmative, and the interlocutory judgment appealed from should be affirmed, for the reason that it adjudges and determines the respective rights, shares and interests of the parties to this action to be exactly

the same as in the complaint they are alleged, and in the answers they are admitted and alleged to be. (*Commercial Bank* v. *Pfeiffer*, 108 N. Y. 242; *Miller* v. *Moore*, 1 E. D. Smith, 739; *Millville Mfg. Co.* v. *Salter*, 15 Abb. [N. C.] 305; *Nolan* v. *Skelly*, 62 How. Pr. 102.) The provisions of the will of the common ancestor in title, Benjamin Slade, deceased, do not work an equitable conversion of the real estate into personal property, and the fee vested immediately upon his death in his three sons and the children of his four daughters, subject, as to the sons, to the rights of the testator's widow therein, and as to the daughters' children, to the rights of the testator's widow, and also to the rights of their respective mothers therein. (*Levy* v. *Levy*, 79 Hun, 290; *Butler* v. *Green*, 47 N. Y. S. R. 322; *Bonard's Will*, 16 Abb. [N. S.] 128; *White* v. *Howard*, 46 N. Y. 162; *Hobson* v. *Hale*, 95 N. Y. 598; *Chamberlain* v. *Taylor*, 105 N. Y. 191; *Scholle* v. *Scholle*, 113 N. Y. 261; *Goebel* v. *Wolf*, 113 N. Y. 405; *U. S. T. Co.* v. *Roche*, 116 N. Y. 120; *Matter of McComb*, 117 N. Y. 378.) The defendant and appellant, Benjamin J. Slade, obtained no title to the real estate by the sale thereof to him under the judgment in the partition action brought by him in 1880, as against the children of the testator's daughters. (Code Civ. Pro. §§ 1539, 1557; *Striker* v. *Mott*, 2 Paige, 387; *Campbell* v. *Stokes*, 142 N. Y. 23; *Miller* v. *Wright*, 109 N. Y. 194; *U. S. T. Co.* v. *Roche*, 116 N. Y. 120; *Townshend* v. *Frommer*, 125 N. Y. 446; *Moore* v. *Appleby*, 108 N. Y. 237.)

BARTLETT, J. Benjamin Slade, deceased, the father of Benjamin J. Slade, the defendant, the ancestor in title of the parties, died in 1875, seized of two farms located in the county of Saratoga, and leaving him surviving a widow and seven children, three sons and four daughters. He left a last will and testament, which was admitted to probate; its material portions read as follows:

*First.* (Provides for payment of debts.)

"*Second.* I give and bequeath unto my beloved wife Ange-

line all my household furniture of every name and kind, together with the use and occupation of the house in which I now reside with the lot of land adjoining" (describing it) "for and, during her natural life, or so long as she remains my widow, afterwards to be divided among my children as hereinafter provided.

"*Third.* I give, devise and bequeath unto my children, Sarah A., Benjamin J., Jane F., Catharine A., John D., Anna M. and Fayette, all the rest, residue and remainder of my estate, real and personal, to be divided equally between them, share and share alike, to have and to hold to them, their heirs and assigns forever, except that the shares to my daughters, Sarah A., Jane F., Catharine A. and Anna M., aforesaid, shall remain and be held by my said executors hereinafter named in trust for them during the natural life of each of them, the use, income and interest arising therefrom to be paid semi-annually to each of them, and upon the decease of either the share belonging to the one so dying to be paid to her children, and except further that the balance of the home farm on which I now reside, the use and occupation of which has not been given to my said wife, shall not be sold or divided up during her natural life, or so long as she remains my widow, but shall be held by and remain in charge of my executors and be by them managed for the best interest of my estate, and out of the rents, profits and income of the same I order and direct them to pay unto my said wife, so long as she remains my widow, an annuity of two hundred dollars in quarterly payments from my decease.

"*Lastly.* I do hereby nominate, constitute and appoint my son, Benjamin J. Slade, and my son-in-law, Nathan P. Gates, Executors of this, my last Will and Testament, hereby revoking all former wills by me made."

The widow survived but three years, dying in 1878. In 1879 an action for partition of the premises involved was brought by the defendant herein, Benjamin J. Slade, to which all of the seven children of his father, Benjamin Slade, deceased, were made parties and also Nathan P. Gates, who

with the defendant, Benjamin J. Slade, were testamentary trustees under the will of Benjamin Slade.

That action duly proceeded to final judgment and sale, and the defendant herein, Benjamin J. Slade, became the purchaser in January, 1880. The sons of Benjamin Slade and their grantees received their share of the proceeds of the sale in money.

The shares of the daughters were held in trust by the trustees, and the daughters have received, and the surviving three are receiving, the income of their respective shares.

For fourteen years this judgment in partition had stood at the time this action was begun, and none of the three sons, four daughters, or husbands of the latter had ever challenged its correctness, or the sale under it.

The plaintiff in the present action is the son of Jane F., one of the daughters of Benjamin Slade, who died December 24th, 1893. This action was begun May 1st, 1894, the plaintiff then being thirty-three years of age and he having for more than ten years after attaining his majority refrained from attacking the judgment in the original partition suit.

After the death of his mother, who for years had received the benefits of the original judgment, the plaintiff began this action, claiming that he and his three brothers were remaindermen of the one-seventh of Benjamin Slade's estate, subject to the devise in trust to the executors for the life of his mother; that the trust ceased at her death and that his share of the estate, one-twenty-eighth, vested in him in fee and possession under the will, as he had not been made a party to the original partition suit in 1879 and was not bound by the judgment entered therein.

The court below has sustained this position of the plaintiff and certified to us the single question : "Whether at the time of the commencement of this action the plaintiff had any estate in the lands described in the complaint?"

The respondents' counsel admits in his brief that this question involves only a construction of the will of Benjamin Slade, but, nevertheless, insists that the answer of the appeal-

ing defendant admits plaintiff's title, and that this court will not consider the abstract question growing out of the provisions of the will which is the common source of title. The respondents' counsel further states in his brief that while the Appellate Division decided the case in favor of the respondents without going into the question as to the sufficiency of the pleadings, yet that question was raised by the briefs of counsel in the court below and was properly before it, and would have been sufficient to authorize an affirmance of the judgment had it not chosen to decide the question upon the merits.

As the question certified lies at the foundation of this action, was alone considered by the Appellate Division in its opinion, and is submitted to us, we are called upon to answer it.

We are asked to determine the *status* of plaintiff " at the time of the commencement of this action," and our sole duty is to construe the will of Benjamin Slade.

That instrument is not lengthy, and the principles controlling its construction are well settled. A careful examination of the provisions of the will is necessary to ascertain the intention of the testator and the testamentary scheme he had in mind.

In the second subdivision thereof he devises to the widow the use and occupation of the house in which he resided and the lot of land adjoining, for and during her natural life, or so long as she remained his widow, and " afterwards " this real estate was to be divided "among my children as hereinafter provided." The third subdivision of the will supplements these provisions for the widow by providing that the real estate devoted to her use " shall not be sold or divided up during her natural life, or so long as she remains my widow, but shall be held by and remain in charge of my executors and be by them managed for the best interest of my estate, and out of the rents, profits and income of the same I order and direct them to pay unto my said wife, so long as she remains my widow, an annuity of two hundred dollars in quarterly payments from my decease."

The remainder of the third subdivision, being the first part

o

thereof, discloses the balance of testator's scheme, and it reads
as follows : " I give, devise and bequeath unto my children "
(naming three sons and four daughters), " all the rest, residue
and remainder of my estate, real and personal, to be divided
equally between them, share and share alike, to have and to
hold to them, their heirs and assigns forever, except that the
shares to my daughters " (naming the four) " aforesaid, shall
remain and be held by my said executors hereinafter named
in trust for them, during the natural life of each of them, the
use, income and interest arising therefrom to be paid semi-
annually to each of them, and upon the decease of either, the
share belonging to the one so dying to be paid to her
children  *   *   *." Then follow the provisions, already
quoted, forbidding the sale of the real estate devoted to the
use of the widow.

This is the entire will, and the first question we have to con-
sider is, what was the intention of the testator, the scheme he
had in mind ?

The next question is to determine whether the scheme so
disclosed is legal ?

The central idea of the testator is that to his three sons he
will give each one-seventh of his estate absolutely, with imme-
diate possession and enjoyment of their portion, but the shares
of the four daughters were to be held in trust during their
respective lives, they receiving " the use, income and interest,"
and as each life estate fell in that share was " to be paid to her
children." Passing for a moment the real estate devoted to
the use of the widow, we have an estate consisting largely
of realty, which must be divided into seven shares, three
of which are to be paid over to the sons at once and four of
which pass into as many distinct trusts for life, that will in all
human probability continue for many years, and the principal
of each will be payable at different times. We then have
the restriction imposed upon the executors and trustees that
they must not sell " or divide up " the real estate devoted to
the use of the widow during her life or widowhood. It seems
too clear to require argument that the provisions for the

children raise of necessity an implied trust to sell, and that the restriction as to selling and " dividing up " the real estate to be used by the widow during her life or widowhood, show that the testator meant that it should be sold and " divided up " after the period named, as the rest of his estate had been. It was impossible for the executors and trustees to carry out the provisions of this will without selling the property.

Furthermore, as already pointed out, the principal of the daughters' trusts might be payable to their children, respectively, at periods many years apart. We have here real property consisting of two farms that is found to be incapable of actual partition.

We pass then from the intention of the testator to the question whether his scheme, so clearly disclosed on the face of his will, is legal.

The validity of the trusts in favor of the daughters cannot be successfully attacked. We have here valid express trusts " to receive the rents and profits and apply them to the use of " the testator's daughters, and " to sell the lands for the benefit of legatees." (1 R. S. 728, § 55, subd. 2 and 3.)

As already suggested, the language and general scheme of this will raise an implied and imperative power of sale in order to carry out its provisions. This being so, there was an equitable conversion of the real estate into personalty. (*Delafield* v. *Barlow*, 107 N. Y. 535 ; *Cahill* v. *Russell*, 140 N. Y. 402, 408 ; *Marx* v. *McGlynn*, 88 N. Y. 375 ; *Morse* v. *Morse*, 85 N. Y. 53 ; *Hood* v. *Hood*, 85 N. Y. 561 ; *Fisher* v. *Banta*, 66 N. Y. 468 ; *Bogert* v. *Hertell*, 4 Hill, 500 ; *Dodge* v. *Pond*, 23 N. Y. 69 ; *Asche* v. *Asche*, 113 N. Y. 235 ; *Byrnes* v. *Baer*, 86 N. Y. 210.)

The foregoing cases deal either with an express or implied power to sell and the doctrine of equitable conversion.

It has been remarked that " precedents are not very valuable where the decision must be based on the peculiar phraseology of the entire will " (107 N. Y. 540), but the case before us rests upon the familiar general principles to which reference has been made.

Chancellor Kent laid down the rule as follows : " No formal set of words is requisite to create or reserve a power. It is sufficient that the intention be clearly declared." (4 Kent's Com. 352, marg. p. 319.)

The statute provides : " Every trust power, unless its execution or non-execution is made expressly to depend on the will of the grantee, is imperative, and imposes a duty on the grantee, the performance of which may be compelled in equity, for the benefit of the parties interested." (1 R. S. 734, § 96.)

The language of Andrews, Ch. J., in *Lent* v. *Howard* (89 N. Y. 177), is in point as follows : " But it is clear that a conversion was necessary to accomplish the purpose and intention of the testator in the disposition of the proceeds, and when the general scheme of the will requires a conversion, the power of sale operates as a conversion, although not in terms imperative." (*Dodge* v. *Pond*, 23 N. Y. 69.) " The conversion also will be deemed to be immediate, although the donee of the power is vested, for the benefit of the estate, with a discretion as to the time of sale." (*Stagg* v. *Jackson*, 1 N. Y. 206 ; *Robinson* v. *Robinson*, 19 Beav. 494.)

This general principle is clearly established by the authorities, that the power of sale need not be express, but may be implied when it is evident from an examination of the entire will that otherwise the testamentary scheme would be defeated.

Having examined the scheme of the will, the intention of the testator and the legal principles that work out an imperative power of sale and an equitable conversion, it remains to consider whether these were estates in remainder in the real estate under the daughters' trusts which vested at the testator's death, thereby making this plaintiff a necessary party to the original partition suit ?

It is difficult to lay down a hard and fast rule in cases of this kind. We have on the one hand the general principle that where the gift is absolute, and the time of payment only postponed, time, not being of the substance of the gift, but relating only to the payment, does not suspend the gift, but

37

merely defers the payment. On the other hand, we have a class of cases, which is illustrated by the case at bar, where the entire *corpus* of the estate is not bequeathed and devised to remaindermen, subject to life estates in trust, whose beneficiaries receive the income and rents, but on the contrary the *corpus* of the estate is to be divided into seven shares, three of which are disposed of absolutely and at once and four of which may be held in four distinct trusts for many years, subject to life estates falling in at different times.

This court held in a recent case (*Matter of Brown*, 154 N. Y. 313), following the well-settled rule, that where the *corpus* of the estate is bequeathed and devised to remaindermen, subject to life estates, there is a vesting at the time of testator's death.

That case was squarely within the statutory definition of vested estates, viz.: "They are vested, when there is a person in being, who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate." (1 R. S. 723, § 13.) In the case at bar the remaindermen were not entitled to the possession of the land upon the ceasing of the intermediate or precedent estate.

At the moment of testator's death, in legal contemplation, the land became personalty, and when actual sale was made the three sons took a seventh each of the proceeds absolutely, and each of the four daughters was a beneficiary under a trust for life having for its principal one-seventh of the said proceeds, and the remaindermen under each of these four trusts were respectively vested with the right to receive the principal of the trust on the falling in of the life estate. The naked fee of the land, as it could not remain in suspension, was vested in the trustee and testator's three sons for the purpose of carrying out in fact that conversion which the law already regarded as equitably accomplished. The real estate, as such, could not be dealt with for any other purpose.

The statute provides as to the trustee's title that "every express trust, valid, as such, in its creation, * * * shall vest the whole estate in the trustees, in law and in equity, sub-

ject only to the execution of the trust. The persons for whose benefit the trust is created shall take no estate or interest in the lands, but may enforce the performance of the trust in equity." (1 R. S. 729, § 60.)

It, therefore, follows that the plaintiff was neither a necessary nor proper party to the original partition action, nor can he maintain the present suit.

It may be observed, in conclusion, that in one, at least, of the briefs submitted for the respondents, it is argued that for various reasons the appellant acquired no title against the respondents by the partition action of 1879, which resulted in a sale in 1880.

The power of Benjamin J. Slade to institute the action and the right to bid in the premises at the sale are both challenged. The learned counsel for the appellants has fully replied to these points in his brief, but the specific question certified to us for answer does not permit us to examine into the regularity of the first partition action and the proceedings under it.

We answer the question certified in the negative.

The judgment appealed from should be reversed and the complaint dismissed, with costs as to the appealing defendants in all the courts.

All concur, except GRAY and O'BRIEN, JJ., not voting.

Judgment reversed, etc.