(51 Misc. Rep. 234.)

## SONN v. KENNEDY.

(Supreme Court, Special Term, New York County.   June, 1906.)

1. PARTITION—SALE—RIGHTS OF BIDDER—DOUBTFUL TITLE.

In partition, the heirs at law of one M., entitled to undivided interests in the premises, were alleged by a purchaser at the sale not to have been made parties to the action. Four persons alleged to be the children of one W., claimed to have been an uncle of M., but found by the referee not related to her, had been made parties. W. had brothers and sisters, who, if he had been related to M.'s uncle, would have been interested in the premises, but were not parties. *Held*, that the burden was on the purchaser to show the title doubtful, and, in the absence of any evidence of relationship between the issue of M. and the issue of W., no reasonable doubt as to the title was raised.

2. SAME—PARTIES.

Under a will a trust was created, and the executors and trustees were unable to carry out its provisions without selling the property. *Held* to create an equitable conversion, so that the life tenants and remaindermen were not necessary parties to a suit to partition the property.

3. SAME—SALE—TITLE.

In partition, two of the defendants, who had been adjudged incompetent and for whom a guardian had been appointed, were in an asylum in another state. The order of publication did not provide for any service on the guardian or other person on behalf of such defendants. *Held*, that, service thereunder was insufficient to confer jurisdiction, and rendered the title at the sale unmarketable so as to relieve the purchaser of his bid.

Action by one Sonn against one Kennedy for partition. Order relieving petitioner from his bid on sale of the land.

F. W. & A. E. Hinrichs, for purchasers.

Wolf, Kohn & Ullman, for plaintiff.

Joseph C. Levi, referee.

LEVENTRITT, J.   The purchaser upon the partition sale objects to the title upon three grounds:   First, that there are persons in being, not bound by the judgment in partition, who may prove to be heirs at law of Mary Stuart, deceased, the owner at her death of a life estate in an undivided half of the premises, with remainder to her heirs, second, that the life tenants and remaindermen under the will of one Sarah Halstead Palmer, deceased, the owner of an undivided interest in the premises, were necessary parties to the action, but were not joined; third, that the summons was not properly served upon two adjudged incompetent defendants.

The first objection is untenable.   One Robert McCrea died seised of the premises in question, leaving among other children, a daughter, Mary. Stuart, to whom by his will he devised an undivided one-half of the premises for life, with remainder over to her heirs.   The referee before whom this action was tried found that this remainder passed under the will of Robert McCrea to the paternal and maternal heirs at law of Mary Stuart, deceased, as purchasers.   Four persons were joined as defendants, and they were alleged in the complaint on information and belief, to be children of one William McCrea, the only son of one John McCrea, who, in turn, was the only brother of Robert

McCrea, Mary Stuart's father. The referee found that these defendants were not related to Mary Stuart, and were not, therefore, entitled to share in the premises. It developed on the trial, however, that William was not the only brother of Robert McCrea, and that there were several sisters. The point made by the petitioner, although somewhat involved, resolves itself into the statement that there are persons in existence, brothers and sisters of William McCrea, and their heirs, who have an equal right to claim an interest in the premises as had the four defendant children of William McCrea; that therefore the title rests upon a presumption of fact of such a nature that, if the question should come before a jury, the court could not direct a verdict as a matter of law, but would be required to submit the question of fact to the jury. To support this position the petitioner has the burden of showing that facts exist which make the title doubtful. He presents a letter from a nephew of William McCrea in which the only material statement is: "Of Robert McCrea to whom you refer I know absolutely nothing." This certainly does not tend to show relationship to Robert McCrea. The petitioner has presented no proof of any fact showing the existence of any heirs of Mary Stuart, not parties to the action, who could make claim of title to or interest in the property sold. Whether there be such heirs is the merest conjecture. It is suspicion ending in suspicion; possibility based on possibility. In Ruff v. Gerhardt, 73 App. Div. 245, 76 N. Y. Supp. 743, it was said:

"A mere possibility that there are heirs or any person in existence who could make claim of title to the land is insufficient upon which to base an infirmity of title in the land sought to be conveyed. If reliance is placed upon such fact, it devolves upon the defendant to show it by proof sufficient to raise a reasonable doubt."

See, also, Greenblatt v. Hermann, 144 N. Y. 13, 38 N. E. 966.

The purchaser is entitled to a title free from probable claim. "The court," said Lord Hardwicke, in Lyddall v. Weston, 2 Atk. 19, "must govern itself by a moral certainty, for it is impossible in the nature of things that there should be a mathematical certainty of a good title."

The second objection is also without merit. Under the will of Sarah Halstead Palmer the corpus of the estate was divided into eight equal parts, six of which were disposed of absolutely and at once, and the remaining two were to be held in trust, subject to life estates which might fall in at different times. It was impossible for the executors and trustees to carry out the provisions of this will without selling the property, to do which they were given "full power and authority." Equitable conversion was thereby created and the trustees represented the entire interest of the life tenants and the remaindermen. Salisbury v. Slade, 160 N. Y. 278, 54 N. E. 741; Real Prop. Law, Laws 1896, p. 572, c. 547, § 80. In considering this subject it is not possible to lay down any "hard and fast rule." Salisbury v. Slade, supra. Nor is it of any advantage to compare cases. The object in the construction of wills is to ascertain and effectuate the testator's intention, and the facts and circumstances of each case must, therefore, of necessity furnish the sole guide to interpretation. It follows that the life

tenants and remaindermen under the will in question were neither necessary nor proper parties to the action.

The third objection presents a more serious question. At the time the action was commenced two of the defendants were adjudged incompetents, were inmates of an asylum for the insane in Michigan, and a guardian had been duly appointed for them. The order of publication directed the mailing of copies of the summons and orders to the incompetents at the asylum in which they were confined, but contained no provision for service upon the guardian or upon any other person in their behalf. The affidavit of service shows literal compliance with the order. No special guardian was appointed in this action for the incompetents, and they were not represented. I am of the opinion that the court never acquired jurisdiction of these defendants. Section 426 of the Code provides, in part:

"(1) Personal service of the summons upon a defendant, being a natural person, must be made by delivering a copy thereof within the state as follows: * * * (2) If the defendant is a person judicially declared to be incompetent to manage his affairs, in consequence of lunacy, idiocy or habitual drunkenness, and for whom a committee has been appointed, to the committee, and also to the defendant in person."

The obvious purpose of this section was to continue the rule which existed under the common-law and equity practice, and which required service upon a person other than the incompetent of sufficient understanding to appreciate the nature of and to heed the process. Section 438 of the Code provides for cases where the summons may be served by publication as follows:

"An order directing the service of a summons upon a defendant, without the state, or by publication, may be made in either of the following cases: (1) Where the defendant to be served * * * being a natural person, is not a resident of the state; * * * (7) When a copy of the summons is required by subdivision first or subdivision second of section four hundred and twenty-six of this act, * * * to be delivered to a person other than the defendant, an order, directing the service of a copy of the summons upon such person without the state, or by publication, may be made as prescribed in this section, as if such person was the defendant in the action."

Although it may be argued that this language indicates that the method of service is discretionary, I believe that it is mandatory and prescribes the sole method. It provides, in effect, that service of a summons without the state, or by publication, where the defendant is a person judicially declared incompetent, may be made, pursuant to an order, as if the person on whom service would have to be made was the defendant. No other construction, is in harmony with the policy of the statute regulating the service of a summons. That policy is to apprise a defendant of the commencement of an action. The interests of an adjudged incompetent within the state are protected by and notice is brought to him through his committee. It cannot be said that the Legislature intended to afford less protection to an adjudged nonresident incompetent merely because of his nonresidence or because his guardian or committee was not appointed under our laws. The same requirements are to be exacted as in the case of a resident incompetent before jurisdiction can be acquired. Jurisdiction cannot

be founded upon such service as was effected in this case. It follows that the petitioner's third objection is well taken. The service upon the incompetents was insufficient. The court never acquired jurisdiction over them. Their interests in the premises are not affected by the judgment of partition. The title is, therefore, unmarketable, and the petitioner should be relieved from his bid.

This conclusion leads to a denial of the motion to compel him to complete the purchase. Ten dollars costs to the petitioner.