(51 Misc. Rep. 166.)

### In re FAILE et al.

(Surrogate's Court, Westchester County. June, 1906.)

1. CONVERSION—DIRECTIONS IN WILL.

Where testator gave all his property to his executors in trust during the life of his wife, with power to sell his real estate, much of which is unimproved, it shows an equitable conversion.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Conversion, §§ 39, 40.]

2. DOWER—PROPERTY SUBJECT.

Where testator provides that on the death of his wife his estate shall be divided among his children, and gives his executors power to sell his real estate, and orders them to pay over to each son, in the event of the wife's death, his share, if he shall have attained the age of 21, a son during the life of his mother has no estate in testator's lands to which a dower interest will attach in favor of his wife.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Dower, §§ 44, 45.]

3. EXECUTORS—JUDICIAL SETTLEMENT—JURISDICTION.

On the judicial settlement of the account of executors and trustees of an estate held by them for the benefit of testator's wife, after her death and in proceedings for the distribution of the estate, the Surrogate's Court has jurisdiction to determine whether the will shows an intention to equitably convert the realty into personalty.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 2003–2005.]

4. WILLS—CONSTRUCTION—RESIDUARY ESTATE.

A will contained carefully drawn provisions creating a trust of testator's residuary estate, and directing the disposition of both principal and income, but made no final disposition of certain portions thereof on certain contingencies, and was followed by a provision disposing of testator's residuary estate without restriction or qualification. Held, that the latter clause should be restricted in its application to the portions of the residuary estate of which, under the prior provisions, final disposition had not been made.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1279.]

In the matter of the judicial settlement of the account of Emma S. Faile and another, executors of Edward Faile, deceased, and of Charles B. Faile, as trustee for Adele L. Browning under the will of said Edward Faile. Decree rendered.

Brush & Crawford, for executors.

John J. Crawford, for George E. Faile.

Louis C. Van Doren, for contestant.

SILKMAN, S. The testator died a resident of Westchester county May 31, 1870, leaving him surviving a widow, Emma S. Faile, and three infant children, Adele L., now Mrs Browning, George E., and William H., his only heirs at law. His personal estate amounted to about $36,000, while his real estate interests improved and unimproved were large, yielding at his death about $12,000 annual net income. The first paragraph of his will provides for the payment of debts, the second paragraph contains a bequest to his wife of certain household effects, the third paragraph devises to his wife a piece of

land inclosed with the grounds about one house at Woodstock, and then follow these provisions:

"Fourth. I do give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal to my executors hereinafter named to have and to hold the same during the natural life of my wife, subject to such directions and changes as I may hereafter make.

"Fifth. I do order and direct my said executors to apply to the use of my said wife, one-half of the net income of my estate during her natural life.

"Sixth. I do order and direct my said executors to apply one half of the net income of my estate to the support, maintenance and education of my children during their minority and in case that there shall be more than is necessary for that purpose, then to apply the surplus to the use of my said wife annually.

"Seventh. I do order and direct that as each of my children shall arrive at the age of twenty-one years that my said executors apply to his or her use, his or her proportionate share of the said one-half of the net income of my estate during his or her natural life. In case of the death of any of my children leaving children them surviving, such children are to receive the share of their parent, share and share alike.

"Eighth. When my said wife shall die, then I do order and direct all my estate to be divided into as many shares or portions as there shall be children of mine then living, or who shall have died leaving a child or children then living. And I do further order and direct my said executors to apply to the use of each of my daughters who shall then be living, the interest or income of one of said shares or portions during her natural life. And that they pay over to each of my sons, provided he shall have attained the age of twenty-one years, and to the child or children of each child who shall then have died leaving a child or children him or her surviving, and then living, one of such shares or portions.

"My executors are to divide the estate according to the above provision and hold the control of each son's share until he arrives at the age of twenty-one years. Upon the death of my daughters, I do order and direct her share or portion to be divided among her children, share and share alike. In case any of my daughters shall die after the death of my wife, leaving no children her surviving then I do order and direct that her share or portion fall into the residue of my estate, and be distributed as hereinafter provided.

"Ninth. I do give, devise and bequeath all the rest, residue and remainder of my estate, as well real as personal to such of my children as shall survive me, and to the children of such of my children as may then have died leaving a child or children, the same to be divided into as many shares as I shall leave children me surviving and children who shall have died leaving a child or children then living, each child to receive one share and the child or children of each deceased child to receive one share.

"Tenth. I authorize and empower my Executrix and Executors hereinafter named to sell and dispose of all or any of my real estate at their discretion and good and sufficient deeds thereof, in the law, to make, seal and deliver."

The son George married Stella A. Fullgraff November 1, 1882, but she divorced him on or about the 23d of January, 1893. After the divorce she married again, and is now Stella A. Pringle; and, having been a party to this proceeding, comes into court contesting the distribution of the estate. Emma S. Faile, widow of the testator, died November 22, 1901. The trust for her life having terminated by her death, the executors sold the real estate and now present their account and seek to have distribution awarded.

Mrs. Pringle, the contestant, claims that her former husband, George E. Faile, was seised and possessed of an estate of inheritance in which she is entitled to an inchoate dower right. She challenges the juris-

diction of the Surrogate's Court to construe the will and to make distribution of the moneys in the hands of the executors; and she also demands that the proceeding be dismissed as to her, upon the ground that the surrogate is without authority to try any question affecting her alleged dower interest. The position of the contestant would undoubtedly be correct as to the surrogate's jurisdiction, and she would not be a necessary party, were we distributing the estate of her former husband, but this we are not doing. We are distributing the estate of the father, Edward Faile, in which his son George and others are interested parties as legatees. The contestant takes no interest under the will of Edward Faile, nor by descent or inheritance from him. She takes, if at all, by virtue of the former marital relation with the son, who is a legatee under the will of the father. She stands in the same relation as a grantee or assignee or judgment creditor of her husband would stand. It needs no citation of authority for the proposition that the Surrogate's Court cannot in any way determine the rights between a legatee and his assignee. Nevertheless, the Surrogate's Court has jurisdiction upon the distribution of an estate to bring into court all those who may make claim to a distributive share or interest, so that the amount of such share may be determined, set part, and impounded, to the end that the claims thereto may be litigated and adjudicated in a court of competent jurisdiction. The account discloses that the fund for distribution arises from moneys realized from personal as well as real property. Both kinds of property are mixed in a common trust fund.

This court is not asked to determine interests in land. It is called upon to adjudicate the distributive shares in money, the proceeds of land sold under a trust power contained in testator's will, and the authority to do this is yet to be denied to the Surrogate's Court. If, however, there are claims to a share or interest of one who would otherwise be entitled to take under the testator's will and by virtue of the surrogate's decree, the surrogate must halt his distribution of that particular share until judicial instructions are received from a court of competent jurisdiction; and so we must consider, in the first place, the question as to whether the claim made by contestant is one which in any wise can affect the distribution or require the distributive share of George E. Faile to be withheld from him pending such litigation as the former may desire to institute. If it were the estate of George E. Faile that was being distributed, it might be said that, if an inchoate right of dower existed, it could not be extinguished except by consent of the doweress, and would still exist in the property itself. In other words, the contestant would have to look to the property itself, and it would be a question between the contestant and the purchasers of the property as to the validity of her claim.

It is argued on behalf of George E. Faile that during the period of his marriage, from the 1st day of November, 1882, to the 23d day of January, 1893, he was not seised of an estate of inheritance in the land left by his father, and that it is not sufficient that he had a vested remainder expectant upon a life estate, but that he must have had either the actual possession or the immediate right of possession be-

fore dower would attach (citing Durando v. Durando, 23 N. Y. 331; Clark v. Clark, 84 Hun, 362, 32 N. Y. Supp. 325) ; that by the terms of his will the testator having devised and bequeathed all the residue of his estate both real and personal, to have and to hold the same during the life of his wife, and to apply one half of the net income to her use, and the other half to the use of his children, the direction to apply the income necessarily implies that the executors shall receive the rents and profits of the real estate, hence they must have been entitled to the possession, at least during the life of the testator's widow, the trust to receive and apply the rents and profits being one of those expressly authorized by statute; that the title to the property must be as the statute provides:

"Every express trust valid as such in its creation except as herein otherwise provided, shall vest the whole estate in the trustees in law and in equity, subject only to the execution of the trust. The persons for whose benefit the trust is created shall take no estate or interest in the lands, but may enforce the performance of the trust in equity." 1 Rev. St. p. 729, pt. 2, c. 1, tit. 2, § 60.

This argument seems to be sound.

George E. Faile, a valid express trust having been created to continue during the life of his mother for her benefit, as well as for his own and that of his brother and sister, by the clear language of the statute, took no estate in the land, but only a right to enforce the trust in equity. Though the trust estate did not last beyond the life of testator's widow, it was valid up to that time, and the estate vested in the trustees as long as she lived. The cases Morse v. Morse, 85 N. Y. 53, and Robinson v. Adams, 81 App. Div. 20, 80 N. Y. Supp. 1098, support the proposition that during the continuance of the trust no dower could attach to the interest of the remaindermen.

If we were to contemplate only a valid express trust with real property the subject of it, I am inclined to the opinion that the surrogate would be without jurisdiction to determine the question raised, no matter how simple and clear the solution might be; but the position of the executors goes further, and they claim, that, correctly construing the provisions of testator's will, there is found an intention to equitably convert the realty into personalty. The Surrogate's Court having undoubted jurisdiction to determine all questions of construction involving personal property, it follows that it has jurisdiction to decide the question as to what is personalty, and so this court must ascertain whether the provisions of the testator's will have worked an equitable conversion of his realty. While the result of the consideration of this question may in effect determine the claim of the contestant, we can make no finding in reference to her claim of dower; but we cannot, however, escape the jurisdiction to construe wills which this court has, irrespective of the indirect results of our adjudication. In examining the provisions of the will, I find strong evidence, viewed in the light of the authorities, of an intention to convert the real into personal estate. By the fourth paragraph of the will it is directed that both real and personal estate is to be held in trust during the natural life of testator's wife. This blending of real and personal property in a trust fund is indicative of an intent to

work an equitable conversion. Matter of Russell, 59 App. Div. 242, 69 N. Y. Supp. 563. The gift of the whole residuary estate to the executors, accompanied by a power of sale, evinces a purpose of conversion.

In Morse v. Morse, 85 N. Y. 53, where a will of somewhat similar character was under consideration, Judge Andrews says:

"It is clear that the power of sale in the will in question was conferred for the purpose of conversion, and with a view to the distribution of the proceeds of the sale of the land among the testator's children. This is not expressly declared, but the prior gift of the whole residuary estate to them, followed by the power of sale to the executors, permits of no other inference."

The case of Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498, is one of similar aspect to the one at bar, and there the court denied the right to partition upon the ground that there was an equitable conversion. Salisbury v. Slade, 160 N. Y. 278, 54 N. E. 741, is also in the same line. So, also, are the cases of Power v. Cassidy, 79 N. Y. 602, 35 Am. Rep. 550; Matter of Russell, 59 App. Div. 242, 69 N. Y. Supp. 563; Horsfield v. Black, 40 App. Div. 264, 57 N. Y. Supp. 1006. From these authorities it may be said that, under the provisions of a will similar to those in the one before us, the question of equitable conversion is removed from the realm of doubt. And it may be stated as a general proposition that where a testator provides that the use of his entire property shall be enjoyed by his wife and children, or either, and a considerable portion of his estate is unimproved, is a burden, and from which no use can be obtained except by a sale and an investment of the proceeds, to deny the doctrine of equitable conversion as applicable would destroy and nullify the very object which the testator had in mind, namely, the support, care, and maintenance of his family. This doctrine would seem to be imperative; for, if it were otherwise and the unproductive property is carried at the expense of the productive, the indirect result would be the accumulation of income in the nonproducing real estate, thus violating the statute against accumulations except during the minority of infants. What cannot be done directly cannot be done indirectly. Matter of Rogers, 22 App. Div. 428, 48 N. Y. Supp. 175.

While in the case at bar the character of the testator's real property is not clearly set forth, nevertheless there is sufficient in the testimony and accounts in evidence to show that a large portion of it was unimproved, the use and benefit of which could only be obtained by a sale and an investment of the proceeds. The fact that a sale was not accomplished for many years after the testator's death does not militate against the argument, for it would have been the duty of a court of equity or the surrogate, upon application, to have ordered a sale and made the trust property thereby of some use to the life beneficiary. The fact that such life beneficiary willingly suffered the delay can make no difference in the application of the rule of law.

The only argument which addresses itself to the court against the doctrine of equitable conversion being applied to the provisions of Mr. Faile's will is the language of its ninth clause, which in its terms seems to conflict with the preceding paragraphs providing for a trust

for the benefit of his wife and children. It would seem to be an absolute devise and bequest of the rest, residue, and remainder of the estate, in cotradiction of the devise and bequest of the rest, residue, and remainder of the estate as found in the fourth paragraph of the will. We must read the whole testamentary instrument together, and give all parts effect, if possible. It would do violence to our common sense to say that a purpose contained in a will, carefully drawn, with its scheme developed in several numbered paragraphs, each consistent with and depending upon the other, was intended to be abrogated by the sweeping devise and bequest contained in the ninth clause.

We must seek for a reason for the latter clause, and see whether it may not be read as a completion of the scheme developed in the preceding paragraphs, rather than a substitution for and in contradiction of it. Under the seventh and eighth clauses of the will certain contingencies are provided for by the testator, but not all, such as the death of a son after the death of the widow without having reached 21 years of age. That the ninth clause was meant to provide for just such contingencies, we get an inkling from the language at the end of the eighth clause, where it is provided:

"In case any of my daughters shall die after the death of my wife leaving no children her surviving, then I do order and direct her share or portion to fall into the residue of my estate and be distributed as hereinafter provided."

That is to say, the testator did not intend the ninth clause to be a substitute for the previous clauses, but to be effective after all the prior clauses had been fulfilled; and its mission was to provide for that which might, by reason of some contingency, be outside of the preceding testamentary provisions. It is clear that the draftsman did not appreciate the force and effect of the words used, for we find the language of the eighth clause is out of harmony with itself, in that it directs that the daughter's share of the residue shall fall into the residue. This inconsistency would seem to be a guide to a testator's intention that the residue referred to in the ninth clause is to be considered a contingent residue, made up by a failure of the previous paragraphs to operate by reason of the happening of some contingency unprovided for.

The case of McKinlay v. Van Dusen, 76 App. Div. 200, 78 N. Y. Supp. 377, while not altogether in point, in some respects is strikingly similar. There the testator by the fifteenth clause of his will devised and bequeathed all his property to 15 different persons to be equally divided between them, so that each should have the use of one-fifteenth part thereof for and during the term of his or her natural life only, and on the death of either his or her share was given to his or her legal heirs. The executors were then directed to collect and pay over the income to the beneficiaries and the distributive shares of the several beneficiaries were devised and bequeathed to the executors in trust, and the executors were given full power to sell all or any portion of the real estate. By the sixteenth clause all the rest, residue, and remainder of the testator's property and estate of every name and nature was devised and bequeathed to the persons previously

named as beneficiaries, to be equally divided between them. The court held that the sixteenth clause was not intended to abrogate or as a substitute for, or as a qualification of, the fifteenth clause, and that, if it was not wholly superfluous, its apparent office was to cover anything omitted by the language used in the fifteenth, clause.

A decree of distribution may be entered distributing the property of the testator as if same were personalty. If the result at which I have arrived is correct, then it follows that the contestant is not a necessary party to the proceeding, and she may have a finding to that effect, and have costs payable out of the estate. No part of the fund can be impounded to meet any claim made by her. The finding that the estate is personalty is wholly inconsistent with any claim that she may make as doweress. If, however, it is desired to review the determination of this court, a stay of distribution of George E. Faile's share may be had, so that the fund will not be beyond reach in case the Appellate Court arrives at a different result.

Decreed accordingly.