---

(87 Misc. Rep. 31)

#### UTICA TRUST & DEPOSIT CO. v. THOMPSON et al.

(Supreme Court, Equity Term, Oneida County.   September 1, 1914.)

1. TRUSTS (§ 124*)—EXPRESS TRUST—REQUISITES—CERTAINTY OF BENEFICIARIES.

A bequest in trust for the benefit of one during his natural life, and then over in trust to pay the income to such charitable institutions as shall be designated by any three trustees, considered merely as an express trust, was invalid, both at common law and under the statutes, because of the uncertainty of the beneficiaries entitled to its enforcement; nor would the power in the trustees to select the beneficiary obviate such objection, unless the persons or corporations from which such selection was to be made were so identified that a court of equity would have power to enforce the execution of the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 167; Dec. Dig. § 124.*]

2. CHARITIES (§ 37*)—CONSTRUCTION—APPLICATION OF CY PRES DOCTRINE—ADOPTION INTO STATE LAW.

In view of the act of 1788, repealing St. 43 Eliz. 4, the doctrine of charitable uses as known in England prior to the Revolution had no place in the law of the state, before Personal Property Law (Consol. Laws, c. 41) § 12, and Real Property Law (Consol. Laws, c. 50) § 113, embodying

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Charitable Uses Act (Laws 1893, c. 70), revived the doctrine and restored to the court all the power formerly exercised by a Court of Chancery in the enforcement thereof, including their exemption from the statute of perpetuities.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 91–93; Dec. Dig. § 37.*]

3. CHARITIES (§ 21*)—CERTAINTY OF BENEFICIARIES—STATUTE OF CHARITABLE USES.

Under Personal Property Law (Consol. Laws, c. 41) § 12, authorizing the grant or bequest of personal property to any incorporated institution in trust for specified purposes, and Real Property Law (Consol. Laws, c. 50) § 113, providing that no gift or bequest to religious or charitable uses should be invalid for uncertainty in designating the beneficiaries, and that, if the instrument making such a gift or bequest does not name a trustee to execute it, the title thereto shall vest in the Supreme Court, and giving the Supreme Court control over the administration of such trusts, a gift or bequest in trust for the benefit of one for life, and then over to trustees and their successors, to pay the annual income "to such charity or charitable institutions" as should be agreed upon by them, was not invalid for uncertainty of the beneficiaries.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 44–50; Dec. Dig. § 21.*]

4. CHARITIES (§ 22*)—CHARITABLE USES—"CHARITY"—"CHARITABLE INSTITUTION."

Personal Property Law (Consol. Laws, c. 41) § 12, authorizes bequests of personal property to incorporated institutions in trust for certain charitable uses, and Real Property Law (Consol. Laws, c. 50) § 113, empowers the Supreme Court to administer charitable uses, where, by reason of the uncertainty of the beneficiaries, they would otherwise fail. Testatrix left property in trust for the benefit of one for life, and then over to trustees to pay the annual income "to such charity or charitable institution as shall be designated by and agreed upon by any three of said trustees." *Held*, that the word "charity," in its popular sense, meant whatever is bestowed gratuitously on the needy or suffering for their relief, and included charitable institutions and gifts to create and support them; that a "charitable institution" was one for the relief of a certain class of persons, either by alms, education, or care; that the testatrix intended a gift to a general public charity, as distinguished from a private charity; and hence that there was nothing indefinite as to the purposes of the trust.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 51–56; Dec. Dig. § 22.*

For other definitions, see Words and Phrases, First and Second Series, Charitable Institution; Charity.]

5. CHARITIES (§ 22*)—CONSTRUCTION SUSTAINING GIFT.

Personal Property Law (Consol. Laws, c. 41) § 12, authorizing gifts to incorporated institutions for certain charitable uses, and Real Property Law (Consol. Laws, c. 50) § 113, empowering the Supreme Court to administer trusts, otherwise invalid for indefiniteness as to their purpose, are to be liberally construed, to sustain such trusts and devote the fund to purposes permitted by law.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 51–56; Dec. Dig. § 22.*]

6. CONVERSION (§ 15*)—EQUITABLE CONVERSION.

Equitable conversion results from an imperative power of sale, which may be express, or implied because of its necessity to carry out the terms

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the will; and in such case the property is all distributed as personal estate.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52; Dec. Dig. § 15.*]

7. CONVERSION (§ 15*)—EQUITABLE CONVERSION—WILL—"DEVISE."

Testatrix, leaving real estate incapable of division, directed the residue of her real and personal property to be divided into four equal parts, and devised to a friend two shares arising upon such division, and to a trustee one share, to "invest the funds so in his hands" to pay the income, etc., bequeathed the "principal" in the hands of such trustee to her nephew, and by codicil gave such share to trustees to "invest and pay over the income," and gave another share in trust to "invest such funds in his hands." *Held*, that the testatrix regarded such parts as personal property, and hence that the language and general scheme of the will created an implied and imperative power of sale, so that there was an equitable conversion; the fact that the word "devise" is usually applied to the transfer of real estate being insignificant, where the intention is otherwise plain.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52; Dec. Dig. § 15.*

For other definitions, see Words and Phrases, First and Second Series, Devise.]

8. WILLS (§ 849*)—LEGACIES—LAPSE.

Where all the individual legatees named in a will, none of whom were descendants of testatrix, predeceased her, their legacies lapsed and became unbequeathed assets, to be distributed among the next of kin.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2165, 2166; Dec. Dig. § 849.*]

9. WILLS (§ 852*)—FAILURE OF PRECEDENT ESTATE—EFFECT.

The failure of a precedent estate in trust for the nephew and sister of testatrix during their respective lives, by reason of their death before the testatrix, whereby their legacies lapsed, did not affect a gift over to a religious society.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2167, 2168; Dec. Dig. § 852.*]

10. DESCENT AND DISTRIBUTION (§ 38*)—NEXT OF KIN—DEGREE.

In the distribution of lapsed or unbequeathed estate among the next of kin of testatrix, none beyond the degree of first cousins were entitled to participate.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 111, 114, 115; Dec. Dig. § 38.*]

11. EXECUTORS AND ADMINISTRATORS (§ 469*)—ACTION FOR ACCOUNTING AND TO CONSTRUE WILL—JURISDICTION.

While the Supreme Court possesses concurrent jurisdiction with the Surrogate's Court to take and state the accounts of administrators, it will ordinarily refuse to do so, except when special circumstances exist which would prevent the Surrogate's Court from granting full relief, or where, because of such circumstances, justice requires an accounting in the Supreme Court; but where all parties to an action by the administrator with the will annexed for the construction of the will, and for the judicial settlement of its accounts, join in asking the exercise of such jurisdiction, and the court has practically determined all questions which would arise on such accounting before the surrogate, so that nothing remains but to distribute the estate, and where to remit them to the Surrogate's Court would entail a great and unnecessary expense, the court will take the account and distribute the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2000–2009, 2012, 2013; Dec. Dig. § 469.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Utica Trust & Deposit Company, as administrator with the will annexed of Mary Thompson, deceased, against Julia Teller Thompson and others, for the construction of the will, and for the judicial settlement of its accounts as administrator, etc.   Interlocutory judgment entered, construing the will, and directing the distribution.

Cookinham & Cookinham, of Utica, for plaintiff.

Josiah Perry, of Utica, for defendant Bliss.

Dunmore & Ferris, of Utica, for defendant Head.

Harris & Towne, of New York City, for defendant American Bible Society.

E. W. Holt, of Buffalo, for defendant Lizzie B. Simmons.

Byron H. Johnson, of Buffalo, for defendants Elliott Simmons and others.

Geo. E. Dennison, of Utica, for defendants Fisher and Crandall.

Wm. E. Seavey, of Utica, for defendants Lewis and others.

L. M. Martin, of Clinton, for defendant Thompson.

Henry E. Newell, for defendants Denison and others.

EMERSON, J.  One Mary Thompson died in the city of Utica on or about June 24, 1912, having no relatives nearer than first cousins, and leaving an estate consisting of personal property amounting to about $13,000, and real estate of the value of about $1,300.  She left a last will and testament, which was duly executed by her on March 20, 1883, whereby, after a bequest to William R. Edwards and another bequest to Dr. A. R. Simmons, she disposed of the residue of her estate as follows:

"Fourth. All the rest, residue and remainder of my property both real and personal I direct to be divided into four (4) equal parts.

"Two (2) parts thereof I hereby give devise and bequeath unto my dear friend Miss H. E. De Lancy of Norwich, Conn.

"One (1) part thereof I hereby give, devise and bequeath unto John W. Wood of Marcy, N. Y., as trustee for the benefit of my nephew Arthur Edward Thomson, son of my brother Edward Thomson until he, said Arthur Edward Thomson shall become twenty-one (21) years of age.  The said trustee to invest the funds in his hands under said trust and to pay the income therefrom to or for the benefit of my said nephew Arthur Edward Thomson during his minority in such manner as said trustee in his judgment shall deem for the best interests of said minor.  When said Arthur Edward Thomson shall become twenty-one (21) years of age, I hereby give, grant devise and bequeath unto him the principal sum in the hands of such trustee and said trusteeship shall then terminate.

"Fifth. In case my said nephew Arthur Edward Thomson shall die before reaching the age of twenty-one (21) years then and in that case, I hereby give, devise and bequeath the property last above willed to him to my dear friend Miss H. E. De Lancy of Norwich, Conn.

"Sixth. The other one part thereof I hereby give, devise and bequeath unto John W. Wood of Marcy, N. Y., as trustee for the benefit of my said nephew Arthur Edward Thomson during his, the said Arthur Edward Thomson's natural life.  The said trustee to invest the funds in his hands under this trust and to pay the income therefrom to or for the benefit of my said nephew Arthur Edward Thomson during his natural life, in such manner as said trustee in his judgment shall deem for the best interests of said Arthur Edward Thomson.  At the death of my said nephew Arthur Edward Thomson I hereby give, devise and bequeath the one part lastly above willed to him, to Dr. L. A. Tourtellot and Mrs. John G. Brown of Utica, N. Y., Dr. A. R. Simmons of New Hartford, N. Y., and Miss H. E. De Lancy of Norwich, Ct., to be held in

trust by them and their successors and the income therefrom to be given yearly to such charity or charitable institutions as shall be designated by and agreed upon by any three of said trustees. I do hereby authorize empower and direct said trustees and their successors to fill any vacancy occurring among said trustees. Such vacancy shall be filled within one month from the time when it occurs. No person shall be deemed to have been elected to fill any vacancy unless he or she shall receive a majority of the votes of such trustees as are then living."

On March 28, 1888, she duly executed a codicil to said will as follows:

"I hereby revoke so much of section fourth of my said last will and testament, which is dated March 20th, 1883, as gives my nephew Arthur Edward Thomson the one-fourth part of my estate as therein provided. In place thereof I hereby give and bequeath said one-fourth part of my said estate unto Thomas Jefferson Griffith and Arthur R. Simmons of Utica, N. Y., as trustees and in trust nevertheless for the following uses and purposes: To safely invest the same and to pay over the net annual income thereof unto my nephew Arthur Edward Thomson during his natural life. At his death to pay said income unto my sister Mrs. Eliza T. Stryker during her natural life. At the death of said Mrs. Eliza T. Stryker I give and bequeath said one-fourth part of my estate to the American Bible Society."

Said testatrix, in and by said will, nominated and appointed Mrs. John G. Brown, Dr. L. A. Tourtellot, and James S. Sherman executors of the same. After her decease said will and codicil were duly probated, and said Sherman alone qualified as such executor; Mrs. John G. Brown having renounced the appointment and Dr. Tourtellot having predeceased the testatrix. Thereafter said James S. Sherman died, and the Utica Trust & Deposit Company, plaintiff, was duly appointed administrator with the will annexed in his place and stead. The executrix of said deceased executor has duly accounted for his acts as such executor, and paid over to the plaintiff the estate in his hands at the time of his decease, and the same is now held for distribution as directed by the court.

The plaintiff asks the instruction of the court as to the validity of the trust set forth in the sixth clause of the will, and that, after it shall be determined who is entitled to take under said will, the accounts of plaintiff be judicially settled and determined and distribution of the estate directed according to the rights of the parties.

[1] The first and most important question involved in the case is as to the validity of said trust. It is conceded that, considered merely as an express trust, it would be invalid both at common law and under our statutes because of its indefiniteness and the uncertainty of the beneficiaries, as it is one of the first postulates of the common law that a trust without a beneficiary so named or designated that they can claim the enforcement of the trust is invalid. Nor does a power in the trustees to select the beneficiary obviate such objection unless the persons or corporations from which such selection is to be made are so identified that a court of equity would have power to enforce the execution of the trust. Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305, 2 Am. St. Rep. 420; Fosdick v. Town of Hempstead, 125 N. Y. 581, 591, 26 N. E. 801, 11 L. R. A. 715; Tilden v. Green, 130 N. Y. 29, 45, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487.

[2] But the question remains to be considered whether this clause creates a valid trust for charitable uses under the present statutory law of our state. The rise and development of the law of charitable uses furnishes a most interesting chapter in the history of our equity jurisprudence. Its purpose was to obviate the strict rule of the common law which condemned trusts unless the beneficiaries were so named or identified that they would have a standing in court to enforce the same, and it existed in England as early as the Norman Conquest and continued down to the time of the American Revolution. In such cases the Court of Chancery, upon motion of the Attorney General or of the interested parties, assumed jurisdiction of the trust and directed a distribution of the charity as nearly as possible in accordance with the wishes of the testator. To that end a master would be appointed to devise a scheme for such administration, and thus was brought into operation what was known as the "cy pres doctrine," whereby the administration of the charity was carried out with as close approximation to the scheme of the testator as was reasonably practicable.

This doctrine of charitable uses was the subject of more or less legislation by Parliament, which finally by statute (43 Eliz. Ch. 4), known as the "statute of charitable uses," declared and defined the subjects for such uses and provided for the execution of the same. This statute of Elizabeth was repealed in our state upon its organization by act of 1788, and it was long a mooted question in our courts whether, because of such repeal, the doctrine of charitable uses was ever ingrafted into the jurisprudence of this state. Judges of great learning and ability differed upon the subject, some holding that it existed before the statute of Elizabeth, the purpose of that statute being for its regulation only, and therefore such repeal left the doctrine in full force and effect. This view led to the decision of Williams v. Williams, 8 N. Y. 525, which held that the law of charitable uses, as it existed in England prior to the Revolution, was in full force and effect in this state.

On the contrary, it was contended that such a law was contrary to the purpose of our statutes, which was to regulate and administer charities through regular organized corporations, and therefore the repeal of the statute of Elizabeth showed an intention to abrogate the entire doctrine of charitable uses. This latter view finally prevailed, and eventually resulted in the decision of Holmes v. Mead, 52 N. Y. 332, which overruled the Williams Case and decided that the doctrine of charitable uses, as known in England prior to the American Revolution, had no place in our law. This rule was thereafter steadily adhered to, though the courts were many times tempted to open the subject anew for further discussion, and this continued to be the law of the state down to the enactment of the statute known as the Charitable Uses Act in the year 1893.

It is well to bear in mind the history of the law of charitable uses, in order to understand the many decisions, which otherwise might seem to be conflicting, which have been made upon the subject of this charity. The Charitable Uses Act of 1893 provided that no gift, grant, bequest, or devise to religious, educational, charitable, or benevolent uses, which should be in other respects valid, should be deemed invalid because of the indefiniteness or uncertainty of the persons designated

as beneficiaries thereunder in the instrument creating the same; that if a trustee was named the legal title should vest in such trustee; otherwise, in the Supreme Court. It was further provided that the Supreme Court should have control over all such gifts, grants, and bequests, and that the Attorney General should represent the beneficiaries in all such cases, and it was made his duty to enforce such trusts by proper proceedings in court. Laws 1893, c. 701.

This statute was construed by the Court of Appeals in Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568, and it was held that it operated to revive the ancient doctrine of charitable uses, and to restore to the Court all the power formerly exercised by a Court of Chancery in the enforcement of the same, and, as by the ancient law·such charitable uses were exempt from the operation of the statute against perpetuities, .the·same exemption resulted from the statute of 1893. See, also, Matter of Griffin, 167 N. Y. 80, 81, 60 N. E. 284. Following the decision in Allen v. Stevens, the statute was further amended by materially increasing the power of the court in dealing with such indefinite trusts. This amendment was made by chapter 291, Laws of 1901, and was substantially re-enacted in the year 1909 in Personal Property Law, § 12, and Real Property Law, § 113.

[3] The statute, therefore, which was in force at the death of the testatrix, reads as follows:

"1. No gift, grant, or devise to religious, educational, charitable or benevolent uses, which shall in other respects be valid under the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If in the instrument creating such a gift, grant, or devise there is a trustee named to execute the same, the legal title to the * * * property given, granted, or devised for such purposes shall vest in such trustee. If no person be named as trustee then the title to such * * * property shall vest in the Supreme Court.

"2. The Supreme Court shall have control over gifts, grants, and devises in all cases provided for by subdivision one of this section, and whenever it shall appear to the court that circumstances have so changed since the execution of an instrument containing a gift, grant or devise to religious, educational, charitable or benevolent uses as to render impracticable or impossible a literal compliance with the terms of such instrument, the court may, upon the application of the trustee or of the person or corporation having the custody of the property, and upon such notice as the court shall direct, make an order directing that such gift, grant or devise shall be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument, without regard to and free from any specific restriction, limitation or direction contained therein; provided, however, that no such order shall be made without the consent of the donor or grantor of the property, if he be living. [Subdivision thus amended by Laws 1909, c. 144, in effect April 3, 1909.]

"3. The Attorney General shall represent the beneficiaries in all such cases, and it shall be his duty to enforce such trusts by proper proceedings in the courts."

It is therefore clear that, so·far as the indefiniteness or uncertainty of the beneficiaries are concerned, the trust in question is saved from condemnation.by the statute of charitable uses.

[4] But it is urged that, aside from the indefiniteness of beneficiaries, the trust itself is so indefinite and uncertain as to its purpose that it is incapable of enforcement.

In Read v. Williams, 125 N. Y. 561, 26 N. E. 730, 21 Am. St. Rep. 748, it was held that a bequest to such charitable institutions and in such proportions as the executors of the testatrix, by and with the advice of one H., should choose and designate, was void for indefiniteness, because the testatrix had not designated the class of institutions which should receive her bounty with sufficient certainty, and therefore such a selection would be the bounty of the trustees, and not of the testatrix.

In the Tilden Case, 130 N. Y. 29, 45, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487, a direction to executors to apply a certain sum to the use of such charitable, educational, and scientific purposes as in their judgment would be most beneficial to mankind was held invalid for a like reason. It was further said that the power conferred upon the executors was void for indefiniteness and uncertainty in objects and purposes, that the range of selection was unlimited, and that it was not confined to charitable institutions of this state or the United States, but embraced the whole world, and that, therefore, nothing could be more indefinite or uncertain.

In Fairchild v. Edson, 154 N. Y. 199, 48 N. E. 541, 61 Am. St. Rep. 609, the testator bequeathed his estate to his executors with directions to divide the same among such incorporated religious, benevolent, and charitable societies of the city of New York, and in such amounts as should be fixed or appointed by them with the approval of testator's friend, Rev. Dr. Huntington, if living, and it was held that the trust was void for indefiniteness because of failure to designate the beneficiaries as a class with such certainty as to enable the court to execute the trust.

It will, however, be observed that these cases all arose after the overthrow of the Williams Case and before the enactment of the Charitable Uses Act of 1893, that they largely proceed on the ground, not that the trusts were indefinite in their purpose, but that the beneficiaries were not sufficiently ascertained and described, and it was the agitation which followed the Tilden Case that largely influenced the adoption of the Charitable Uses Act. Dammert v. Osborn, 140 N. Y. 43, 35 N. E. 407; Allen v. Stevens, 161 N. Y. 140, 55 N. E. 568.

Following the reinstatement of the doctrine of charitable uses, it was said in Matter of Shattuck, 193 N. Y. 446, 86 N. E. 455, that, notwithstanding that act, a trust may be so indefinite and uncertain in its purpose as to be impossible of administration. It is, however, clear that the court was speaking of the subject of a charitable use rather than the method of its administration. The question involved in that case was whether the bequest was to an educational use within the meaning of the statute, and it was held that it did not definitely appear that it was, because it was capable of being used for private purposes, and, therefore, it could not be upheld as a charitable use.

In Manley v. Fiske, 139 App. Div. 667, 124 N. Y. Supp. 149, it was said arguendo that a direction to divide the residue of an estate among such American charities as the executors might think well of was void for indefiniteness of purpose. It was, however, held that the trust was saved by succeeding words designating a class of persons the testator desired to assist. This case was affirmed by the Court of Appeals with-

out an opinion in 201 N. Y. 546, 95 N. E. 1133, so that it is impossible to determine the views of the Court of Appeals upon the subject discussed in the court below.

A reference now to the English cases and those in our own state since the enactment of the Charitable Uses Act will be useful, inasmuch as it is settled law that the effect of that statute was to restore the ancient doctrine of charitable uses. The English Chancery Reports contain many cases upon this subject, but the collation of a few of these decisions will show the general trend of that court in dealing with the question.

In the reign of Charles II a testator left a bequest to the parish of Great Creaton, and the Master of the Rolls, being in doubt, asked the opinion of the judges, and on their advice held it a valid bequest to charitable uses. West v. Knights, Chancery Cases, 134.

Following this decision, and in the year 1790, a bequest of the residue of an estate to be laid out for charitable and other pious and good uses in the discretion of the trustees was held a valid trust for such charitable uses. Atty. Gen. v. College of William & Mary, 1 Ves. Jr. 243.

In 1802 a bequest for such purposes as the executors might think most conducive to the good of the county of Westmoreland, and especially the province of Lowther, was held a valid bequest for like reason. For the purpose of executing this charity the court referred it to a master to devise and report a scheme for the same. Atty. Gen. v. Earl, 1 Simons, 105.

In Legge v. Asgill, Turner & Russell, 265, note, it was held that a direction to have the residue of an estate which might remain given in charity was a valid and effective bequest for that purpose.

In Nightingale v. Goulbourn, 5 Hare, 484, a bequest to the Chancellor of the Exchequer to be appropriated for the benefit and advantage of Great Britain was held a good gift to charitable uses.

In Whicker v. Hume, 7 House of Lords Cases, 123, 154, a bequest to trustees to be applied by them according to their discretion for the advancement and propagation of education and learning all over the world was held a valid trust to charitable uses and that it was not void for uncertainty.

So a bequest to be laid out in the service of my Lord and Master and, I trust, my Redeemer, was held in the High Court of Chancery in Ireland to be a good gift to charitable uses. It was said in this case that, while Ireland had no statute of charitable uses similar to that of Elizabeth, the English system had been adopted, and if the will gave the trustees discretion the court would not interfere with the same; otherwise, it would appoint a master to settle a scheme for its execution. Powerscourt v. Powerscourt, 1 Malloy (Irish Chancery) 616.

But one of the most interesting and instructive cases to be found on this subject arose in 1802, and is that of Moggridge v. Thackwell, 7 Vesey, 36, where the testatrix gave her residuary personal estate to her executor, desiring him to dispose of the same in such charities as he shall think fit, recommending poor clergymen who have large families and good characters. Lord Thurlow devised a scheme for the execution of this charity, which was affirmed by Lord Elden, who held that the trust was sufficiently definite to be executed by the court.

The Lord Chancellor cites in his opinion many cases of indefinite trusts that have been enforced as charitable uses, and as to the method of execution concludes from an examination of all the authorities that where no trustee was mentioned, but there was a general and indefinite gift to charity, it would be disposed of by the king as parens patriæ and constitutional trustee under his sign manual, which, being filed in chancery, would be enforced by a decree of that court; but where the execution was to be by a trustee, and a general purpose was pointed out, the court would take upon itself the full administration of the trust and dispose of the same upon a scheme reported by the master. The Lord Chancellor further says in the course of his opinion:

"That if the testator has manifested a general intention to give to charity, the failure of the particular mode in which the charity is to be effectuated shall not destroy the charity, but, if the substantial intention is charity, the law will substitute another mode of devoting the property to charitable purposes, though the formal intention as to the mode cannot be accomplished. * * * All the cases prove that where the substantial intention is charity, though the mode by which it is to be executed fails by accident or other circumstances, the court will find some means of effectuating that general intention."

It is well to note in this connection that the power which the Lord Chancellor thus refers to was expressly conferred upon the Supreme Court by amendment to the Charitable Uses Act in 1901, which provided that, when it was impossible to carry out the scheme of the testator, the court might substitute therefor such a scheme as in its judgment would most effectually accomplish the general purpose of the testator.

The above cases well illustrate the extent to which the Court of Chancery has gone in England in enforcing indefinite trusts for charitable uses. The decisions of our own courts since the statute of 1893 seem to be substantially in accord with those in England made under the ancient doctrine of charitable uses. Thus in Kelly v. Hoey, 35 App. Div. 273, 55 N. Y. Supp. 94, it was held that a direction to divide the residue of an estate among any poor families or any charitable organization in the city of Brooklyn which should seem to the executors most deserving of assistance was valid and enforceable as a gift to charitable uses.

In Matter of Fitzsimons, 29 Misc. Rep. 205, 61 N. Y. Supp. 485, a bequest to the pastor of a Roman Catholic church to be used by him in aid of a society in his church, designed to assist the poor, was sustained as a trust for a charitable use in supporting the poor of said parish.

In Buell v. Gardner, 83 Misc. Rep. 513, 144 N. Y. Supp. 945, a bequest of the residue of an estate to the executor in trust to apply and expend the net income for the benefit of such institutions and persons as may be worthy, needy, and deserving of the same was held to be valid for like reasons.

In the case of Bowman v. Domestic & Foreign Missionary Society, 182 N. Y. 494, 75 N. E. 535, where a bequest had been made to missionary societies that had no existence, it was held that it was invalid as a direct bequest to beneficiaries, but, nevertheless, would be supported as a valid charitable use for missionary purposes, and the same

would be administered by the court through the instrumentality of a trustee to be appointed. In the Robinson Case, 203 N. Y. 380, 96 N. E. 925, 37 L. R. A. (N. S.) 1023, a bequest to provide shelter, necessaries of life, education, and other financial aid as might be fit and proper to such persons as the trustees might select, was upheld as a valid charitable use; and in the Cunningham Case, 206 N. Y. 601, 100 N. E. 437, a bequest to be applied to such charitable and benevolent associations and institutions of learning as the executors might select was sustained for like reasons.

The Charitable Uses Act validates gifts to religious, educational, charitable, or benevolent uses, and all that is necessary to support a gift under this statute to charitable uses it that it shall be for one of the above purposes and shall be capable of enforcement by the court at the instance of the Attorney General. Matter of Shattuck, 193 N. Y. 446, 451, 86 N. E. 455; Matter of Robinson, 203 N. Y. 380, 389, 96 N. E. 925, 37 L. R. A. (N. S.) 1023; Matter of Cunningham, 206 N. Y. 601, 605, 100 N. E. 437.

Coming, now, to the present bequest, the language is:

"To such charity or charitable institutions as shall be designated by and agreed upon by any three of said trustees."

The statute, it will be seen, differentiates to some extent between religious, educational, charitable and benevolent uses, and if a bequest for missionary uses, as held in the Bowman Case, or for shelter, necessaries of life and education, as held in the Robinson Case, or for charitable and benevolent associations and institutions of learning, as held in the Cunningham Case, are all sufficiently definite to find support in the statute, it is difficult to see how a trust to charity or charitable institutions is indefinite or uncertain as to its purpose. The word "charity" in its popular sense means whatever is bestowed gratuitously on the needy or suffering for their relief, and includes charitable institutions and gifts to create and support the same. A "charitable institution" is defined to be one for the relief of a certain class of persons, either by alms, education, or care. It seems to me that these words were used by the testatrix in their popular sense, and that her intention was that the property, after the death of the life beneficiary, should be devoted to such uses as would furnish aid and assistance to the poor and needy, and thus be for the general benefit of all. Thus construed, there can be nothing indefinite as to the purpose of the trust, especially as the statute expressly authorizes gifts to charity as contradistinguished from gifts to religious, educational, or benevolent uses.

[5] It is urged that it is quite possible to comply with the terms of the will by devoting the fund to private charities and thus remove the case from the protection of the statute. While this may be true, it is very evident that the testatrix had in mind public, as contradistinguished from private, charities. Charitable institutions are not, as a rule, formed for private charities, and the coupling by the testatrix of the words "charity" and "charitable institutions" shows that she intended to take the fund from her collateral relatives and have it ap-

plied to the general relief of mankind. But, granting that the words are susceptible of the meaning claimed, it is nevertheless the duty of the court to adopt such construction as sustains the trust and devotes the fund to purposes permitted by the law. Matter of Robinson, 203 N. Y. 380, 388, 96 N. E. 925, 37 L. R. A. (N. S.) 1023; Buell v. Gardner, 83 Misc. Rep. 521, 144 N. Y. Supp. 945.

. The Charitable Uses Act was passed for a most beneficent purpose, and it is the duty of the court to give a liberal construction to cases arising under its provisions, and to hold that the case was not brought within the terms of the act would completely nullify the beneficent purpose of the testatrix, and would, as a distinguished jurist once said, deny the statute that practical effect which would make it operative to save gifts to charitable uses. I therefore conclude that the purpose of this trust is sufficiently defined, and that there is nothing to prevent the court carrying out the same, especially as the court has power to carry out all trusts which were enforceable according to the ancient doctrine of charitable uses, and to that end is now clothed by statute with power to substitute schemes for the same when that of the testator fails. Allen v. Stevens, 161 N. Y. 123, 141, 142, 55 N. E. 568; Matter of Griffin, 167 N. Y. 81, 60 N. E. 284; Matter of Cunningham, 206 N. Y. 607, 100 N. E. 437. It follows that the bequest in question is valid as a gift in trust for charitable uses.

[6, 7] The next question which arises is whether, under the terms of the will, there was an equitable conversion of the real estate into personal property. Upon this subject the rule is well settled that equitable conversion results from an imperative power of sale, and that such power of sale may be express or may be implied because of its necessity to carry out the terms of the will. Salisbury v. Slade, 160 N. Y. 278, 288, 54 N. E. 741; Harris v. Achilles, 129 App. Div. 848, 851, 114 N. Y. Supp. 855; Russell v. Hilton, 37 Misc. Rep. 645, 76 N. Y. Supp. 233; Webb v. Sweet, 187 N. Y. 172, 79 N. E. 1024; Recht v. Herschman Co., 139 App. Div. 300, 123 N. Y. Supp. 932; Cahill v. Russell, 140 N. Y. 402, 408, 35 N. E. 664; Mendel v. Levis, 40 Misc. Rep. 271, 273, 81 N. Y. Supp. 965; Kelly v. Hoey, 35 App. Div. 276, 277, 55 N. Y. Supp. 94; Hood v. Hood, 85 N. Y. 561. And in such cases the property is all distributed as personal estate. Russell v. Hilton, 80 App. Div. 180, 186, 80 N. Y. Supp. 563; Weintraub v. Siegel, 133 App. Div. 681, 118 N. Y. Supp. 261; Fraser v. U. P. Church, 124 N. Y. 479, 26 N. E. 1034. ·

The evidence shows that the real estate of the testatrix was incapable of division, and this fact she must be presumed to have known, and to have drawn her will with that understanding. Turning, now, to the will, we find that the testatrix directs all of the rest, residue, and remainder of her property, both real and personal, to be divided into four equal parts. It is impossible to conceive how this could be done without a sale of the property. In fact, a similar provision was held most potential in showing an equitable conversion in the case of Salisbury v. Slade, 160 N. Y. 278, 54 N. E. 741. In this respect the case differs materially from Matter of Tatum, 61 App. Div. 513, 70 N. Y. Supp. 634, Id., 169 N. Y. 514, 62 N. E. 580, which was distinguished from

the Salisbury Case by the absence of a direction to equally divide the estate.

The above construction finds further confirmation in other parts of the will. Thus the testatrix gives, devises, and bequeaths to her friend Miss De Lancy two shares which arise on such division. One share she gives, devises, and bequeaths to a trustee to *invest the funds so in his hands* and pay the income therefrom to or for the benefit of her nephew during his minority, and when said nephew becomes 21 years of age she gives, grants, devises, and bequeaths the *principal* sum in the hands of said trustee to her said nephew, and directs that the trust shall then cease and terminate. This provision of her will she modified by her codicil, whereby she gave and bequeathed said share to trustees to *invest and pay over the income* annually to her nephew during his life, and after his death to her sister during her life, and after her death she gave and bequeathed the said share to the American Bible Society. The remaining share the testatrix gave, devised, and bequeathed to a trustee to *invest said funds in his hands* and pay the income therefrom to or for the benefit of her nephew during his life, and after his death she gave, devised, and bequeathed said part to trustees to be held in trust and the income given yearly to some charity or charitable institution.

It will be observed that all through the will the testatrix, in speaking of the shares into which her estate is to be divided and held in trust, designates them as *the funds in the hands of the trustees* which are to be invested and the income paid over as directed. The only conclusion fairly to be drawn from this language is that the testatrix regarded the portions, thus directed to be held in trust, as personal property. The very recent case of Tailer, 147 App. Div. 741, 133 N. Y. Supp. 122, affirmed on opinion below in 205 N. Y. 599, 98 N. E. 1116, is quite similar to the one here presented, and is a very decisive authority in showing that an equitable conversion resulted from the terms of this will.

It is quite true that in the original will the testatrix uses the words "give, devise, and bequeath," and that the word "devise" is usually applied to the transfer of real estate; but the use of this word is not significant when the context of the will shows a contrary intent. Especially is this so when the testatrix in her codicil omits the word "devise" entirely when dealing with one of the shares so held in trust. The interchange of the words "bequeathed" or "devised" is of no moment, where the intention of the testatrix is plain. Matter of White, 125 N. Y. 545, 549, 550, 26 N. E. 909; Cramer v. Cramer, 35 Misc. Rep. 17, 20, 71 N. Y. Supp. 60; Matter of Tailer, 147 App. Div. 742, 749, 133 N. Y. Supp. 122.

It is said in Asche v. Asche, 113 N. Y. 233, 21 N. E. 70, that the necessity of a conversion of realty into personalty to accomplish the purposes expressed in a will is equivalent to an imperative direction to convert and effects an equitable conversion. I therefore conclude that the language and general scheme of this will created an implied and imperative power of sale to carry out its provisions, and that, consequently, there was an equitable conversion of the real estate into personalty. Salisbury v. Slade, 160 N. Y. 288, 54 N. E. 741.

[8] The record before me shows that with the exception of William R. Edwards, to whom a legacy of $300 was bequeathed, all of the individual legatees mentioned in the will predeceased the testatrix. None of these legatees were descendants of the testatrix, and therefore said legacies lapsed. Decedent Estate Law (Consol. Laws, c. 13), § 29; Van Beuren v. Dash, 30 N. Y. 393; Matter of Wells, 113 N. Y. 396, 21 N. E. 137, 10 Am. St. Rep. 457; Roberts v. Bosworth, 107 App. Div. 511, 95 N. Y. Supp. 239. And the amount of said legacies became unbequeathed assets of said testatrix, to be distributed among the next of kin. Morton v. Woodbury, 153 N. Y. 243, 47 N. E. 1109; Clark v. Cammann, 160 N. Y. 316, 54 N. E. 709.

[9] The failure of the precedent estate in the one-fourth which was directed to be held in trust for the nephew and sister of the testatrix during their respective lives did not affect the ultimate gift to the American Bible Society, and that society is therefore entitled to take the same. Norris v. Beyea, 13 N. Y. 273, 287: Campbell v. Rawdon, 18 N. Y. 412, 421; Downing v. Marshall, 23 N. Y. 366, 370, 80 Am. Dec. 290; Matter of Miller, 161 N. Y. 71, 55 N. E. 385; Williams v. Jones, 166 N. Y. 537, 60 N. E. 240; Wager v. Wager, 96 N. Y. 171; U. S. Trust Co. v. Hogencamp, 191 N. Y. 284, 285, 84 N. E. 74. The remaining one-fourth part of said residue constitutes a valid trust to charitable uses for the reasons above stated.

[10] In the distribution of the estate among the testatrix's next of kin, none beyond the degree of first cousins are entitled to participate. Adee v. Campbell, 79 N. Y. 52; Matter of Barry, 62 Misc. Rep. 456, 116 N. Y. Supp. 798; Matter of Schlosser, 63 Misc. Rep. 166, 116 N. Y. Supp. 796.

The foregoing disposes of all the questions which arise in this case.

[11] As to the relief to be granted, the plaintiffs ask that their account may be taken and stated, and distribution of the estate had, in the proceeding. While the Supreme Court possesses concurrent jurisdiction with the Surrogate's Court to take and state the accounts of executors and administrators, it will ordinarily refuse to exercise such jurisdiction, and will only do so when special circumstances exist which would prevent the Surrogate's Court granting full relief, or where, because of such circumstances, justice requires that such an accounting should be had in this court. Haddow v. Lundy, 59 N. Y. 320; Chipman v. Montgomery, 63 N. Y. 222, 236; Cass v. Cass, 61 Hun, 460, 464, 16 N. Y. Supp. 229; Hard v. Ashley, 117 N. Y. 606, 23 N. E. 177; Sanders v. Soutter, 126 N. Y. 193, 200, 27 N. E. 263; Douglas v. Yost, 64 Hun, 155, 18 N. Y. Supp. 830; Borrowe v. Corbin, 31 App. Div. 172, 177, 52 N. Y. Supp. 741; Bushe v. Wright, 118 App. Div. 320, 103 N. Y. Supp. 410.

All parties now join in asking that this jurisdiction be exercised, and, as the court has already determined practically all the questions which would arise on an accounting before the surrogate, and nothing now remains to be done by the plaintiff, aside from distributing the estate, one-fourth of which must remain subject to the control of the court, and it appearing that there are a large number of persons interested in the estate, largely residing out of the state of New York, all of whom are parties to this action and over whom the court now possesses full

jurisdiction, and it also appearing that to relegate the parties to the Surrogate's Court would entail a great and unnecessary expense, I conclude that it is proper to grant that relief in this action.

An interlocutory judgment should therefore be entered, construing said will along the lines above laid down and directing the distribution of the estate accordingly. The decree should provide for the appointment of a referee to take and state the accounts of the plaintiff as administrator with the will annexed of the testatrix, and, as all the trustees named in the will are dead except Mrs. Brown, who refuses to act, in analogy to the ancient doctrine of cy pres and pursuant to the provisions of the. Charitable Uses Act, the referee should also ascertain and report a scheme for the administration of the charitable use declared in said will, to the end that upon the coming in of his report final judgment may be entered in accordance with the rights of all the parties.

All questions as to costs are reserved until application for final judgment. Findings in accordance with this opinion may be prepared, and, if not agreed to by counsel, settled before me on five days' notice. The plaintiff's attorneys will serve a copy of this opinion with the proposed findings.